J. E. ETHERIDGE v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 22 January, 1936.)

1. **Master and Servant E c—Whether more than reasonable time elapsed between promise to furnish goggles and injury held for jury.**

The evidence disclosed that plaintiff employee, while engaged in scraping rust from a bridge in the performance of his duties in interstate commerce, was injured when a piece of rust flew in his eye, that plaintiff understood the hazards of the work, and some two weeks before the injury had asked his foreman to furnish him goggles for the work, and that the foreman had promised to do so as soon as possible. *Held:* Whether more than a reasonable time elapsed between the promise and the injury and whether the work was so intrinsically dangerous and injury so imminent that a reasonably prudent man would not have relied upon the promise and continued in the employment are questions for the jury under the evidence, the rule being that an employee may rely upon such promise for a reasonable time if the danger is not so imminent that

that a reasonably prudent man would not rely thereon, and that during such time the employer impliedly agrees to assume the risk, and that what is a reasonable time under the circumstances is ordinarily a question for the jury.

2. **Same—**

Under the Federal rule, assumption of risk is a complete bar to recovery by an employee under the Employers' Liability Act.

3. **Same—Where employer promises to remedy defect, it is competent to ask employee whether he relied on promise.**

Plaintiff employee testified that, aware of the danger inherent in the work of scraping rust from a bridge preparatory to painting it, he asked his foreman for goggles, and that the foreman promised to furnish same as soon as possible, that he resumed work and was injured about two weeks thereafter when a piece of rust flew in his eye. On cross-examination plaintiff employee was asked whether he thought he would get the goggles and plaintiff's objection to the question was sustained, and defendant excepted. *Held:* Defendant's exception must be sustained, the question being competent on the issue of whether plaintiff employee continued to work in reliance on the promise to furnish goggles.

4. **Appeal and Error J e—Record need not show what testimony would have been when question is asked adversary witness on cross-examination.**

The general rule that the record must show what the answer or testimony of a witness would have been in order for an exception to the exclusion of the testimony to be considered on appeal, does not apply where the question is asked on cross-examination of an adversary and hostile witness.

DEVIN, J., took no part in the consideration or decision of this case.

STACY, C. J., concurs.

APPEAL by defendant from *Small, J.,* and a jury, at November Term, 1934, of HALIFAX. New trial.

This is an action for actionable negligence, brought by plaintiff against defendant, alleging damage. The complaint is as follows:

"That the defendant is and was at the times herein complained of a corporation duly chartered according to law and operating a railroad through the State of North Carolina.

"That on 12 February, 1931, the plaintiff was in the employment of the defendant as a painter and on said day was, as directed by his foreman, preparing a bridge over Black Creek, near Castle Hayne, N. C., to paint the same.

"That while engaged in scraping the rust from said bridge of defendant, a piece of rust flew from said bridge into the left eye of plaintiff and put the same out.

"That it was the duty of the defendant in the exercise of ordinary care to furnish the plaintiff with goggles to. protect his eyes from flying rust

when the same was scraped from the iron or steel surface of the bridge preparatory to painting.

"That the plaintiff requested the defendant to furnish him with goggles to protect his eyes against rusty steel chips, and the defendant promised to furnish them.

"That the plaintiff continued to work for the defendant, relying upon the promise of his superior to furnish him with goggles.

"That it was dangerous, as was well known to the defendant, to scrape the rust from the iron or steel without the aid of goggles.

"That the plaintiff, by reason of the negligence above set out, completely lost his left eye and suffered on account of the injury received great physical and mental pain, and has been permanently damaged thereby.

"That the plaintiff, by reason of the negligence of the defendant as herein set out, has been damaged a large amount, to wit: The sum of $5,000.

"Wherefore, plaintiff demands judgment of the defendant for the sum of $5,000, and costs."

In its answer the defendant denies the material allegations of the complaint, and alleges: "That, at the time of the matters and things alleged in the complaint, plaintiff and defendant were both engaged in interstate commerce."

The defendant, further answering, alleges: "That the bridge, which plaintiff declares he was engaged in scraping for the purpose of repainting, is on defendant company's main line between Wilmington, N. C., and Richmond, Va., and is daily used in interstate carriage of freight and passengers on trains operating between Wilmington, N. C., and Richmond, Va. That plaintiff and defendant were, therefore, each and both engaged in interstate commerce at the time of the alleged injury and hurt. That plaintiff was an experienced bridge painter and perfectly familiar with the various duties and requirements of his job, especially with the need of scraping or removing rust from iron or steel structures before painting them. That, in hiring himself to or taking employment with the defendant as a bridge painter he assumed all the usual and ordinary risks incident to his employment, of which the matter complained of was one. Defendant alleges that it has not violated any statute enacted for the safety of its said employee that in any wise contributed to the plaintiff's alleged injury, and pleads the plaintiff's assumption of risk in bar of his recovery herein. Wherefore, defendant prays judgment that it be allowed to go hence without day and have of the plaintiff its cost."

The issues submitted to the jury and their answers thereto were as follows:

"1. Was plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. Did the plaintiff assume the risk of his injury? Answer: 'No.'

"3. What damages, if any, is plaintiff entitled to recover from the defendant? Answer: '$4,500.'

"4. Were plaintiff and defendant engaged in interstate commerce at the time of the injury complained of in the complaint? Answer: 'Yes.'"

Judgment was rendered on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*J. T. Maddrey and George C. Green for plaintiff.*
*Thos. W. Davis, Spruill & Spruill, and V. E. Phelps for defendant.*

CLARKSON, J. This case has heretofore been before this Court—*Etheridge v. R. R.,* 206 N. C., 657. *Brogden, J.,* speaking for the Court, at p. 659, said: "What duty does the law impose upon an employer with respect to furnishing particular tools or appliances to a workman in performing particular types of work? . . . This case is built upon the theory that it was the duty of the defendant in the exercise of ordinary care to furnish goggles to the plaintiff. The leading goggle cases in this State are: *Whitt v. Rand,* 187 N. C., 805, 123 S. E., 84; *Jefferson v. Raleigh,* 194 N. C., 479, 140 S. E., 76." A new trial was granted on the ground (pp. 659-670): "The second question of law involved presents the familiar principle of the competency of evidence of similar injuries or occurrences. . . . The testimony of witness Keeter discloses neither the substantial identity of circumstances nor proximity of time which the law contemplates, and consequently such testimony should have been excluded."

There was evidence by the plaintiff that about two weeks before his injury he asked the foreman for goggles and was promised that he would get them as soon as he could. The plaintiff was corroborated by a fellow worker. The foreman, T. E. Thompson, testifying for the defendant, denied making any such promise, but stated, "If Etheridge had had these goggles at the time the steel particle or rust flew in his eye I do not suppose it could have gotten in his eye." The evidence was conflicting, but sufficient to go to the jury, unless the plaintiff assumed the risk of injury in a hazardous employment. The rule under the Federal Liability Act has been well stated in *Seaboard v. Horton,* 233 U. S., 492 (504-505) (which was quoted by the learned judge below in his charge to the jury), as follows: "When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining

from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there is a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk, unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such a promise."

It was for the jury to say whether or not there was a promise made by the defendant and relied upon by the plaintiff, and if so, whether or not the time specified by the plaintiff as "around two weeks before I got hurt" was so remote as to take it out of the classification of a "reasonable time" for its performance, and if not, whether the nature of the plaintiff's work was of such a kind that no ordinarily prudent man would regard the danger as so imminent as to refuse to rely upon such a promise. The learned judge below amply and fully instructed the jury upon these points, presenting all phases of the questions involved. In a case strikingly similar in facts to this one (*Anderson v. Fielding* [Minn.], 99 N. W., 357), it was held that what is a reasonable time, in such a case, is, "as a general rule, a question of fact." The plaintiff in that case was engaged in painting a high bridge across the Mississippi, and his work required him to be suspended 160 feet above the water, and while so suspended he fell and sustained serious personal injury. It was in evidence that the plaintiff objected to the use of a single hook, without swivel or double hook to prevent the block from unhooking and falling, that thereupon the defendant's superintendent promised to furnish for his use a safe tackle and block with double hooks; that he relied upon such promise and proceeded to use with due care the block and hook so furnished, and continued to work for two weeks before his fall and injury from the defective appliance. The first promise was two weeks and repeated afterwards. It was held that a servant is not chargeable with the assumption of risk or with contributory negligence as a matter of law by continuing to use for a reasonable time a machine or appliance which he knows to be unsafe, and appreciates the risk of using it, where he has complained of it, and the master has promised to remedy the defect, unless the appreciated danger is so imminent that a man of ordinary prudence would refuse to longer use it unless it was made safe. In this case it was held that "A reasonable time within the meaning of this rule is any period which does not preclude all reasonable expectations that the promise may be kept." After reviewing the evidence, in the light of this rule, the Court continued: "We are of the opinion that whether the defendant continued to use the defective block and hook longer than a reasonable time, and whether the danger of

using it was so imminent that no man of ordinary prudence would continue to use it in reliance on the defendant's promise to remedy the defect, was, upon the evidence, not a question of law, but one of fact which was properly submitted to the jury."

While it is a maxim of English law that "how long a 'reasonable time' ought to be is not defined in law, but is left with the discretion of the judge" (Coke Litt. 50), this applies only where the facts are admitted, or clearly proved, and "Where the question of reasonable time is a debatable one, it must be referred to the jury for decision." *Hoke, J.,* in *Holden v. Royall,* 169 N. C., 676 (678), said: "And, in this State, authority is to the effect that, where this question of reasonable time is a debatable one, it must be referred to the jury for decision. *Claus v. Lee,* 140 N. C., 552; *Blalock v. Clark,* 137 N. C., p. 140;" *Colt v. Kimball,* 190 N. C., 169 (173-4); *Mason v. Andrews,* 192 N. C., 135, 137.

"Why is not the servant entitled to recover upon that ground, entirely irrespective of the ordinary issue of negligence? To an action upon breach of express contract, contributory negligence is no defense. If the master expressly promises to 'take all the risks,' the servant may recover upon this promise, no matter how obvious the risk may be." Shearman & Redfield on the Law of Negligence (6th Ed.), Vol. 1, sec. 215, p. 616.

As was said in *Swift v. O'Neill,* 187 Ill., 337, 58 N. E., 416 (417): "By the promise of the master a new relation is created between him and the employee whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following his promise." Again, it has been said in *Altman v. Schwab Mfg. Co.,* 104 N. Y. S., 349 (350): "The promise of the foreman to repair the machine, made to the plaintiff to induce him to continue work thereon, constituted a contract on the part of the employer to assume the risk, and relieved the servant therefrom."

It must be borne in mind that under the Federal rule the assumption of risk bars recovery. Plaintiff testified: "I asked Mr. Thompson, the foreman, for goggles when we were at Wallace, around two weeks before I got hurt. He said he would get them for me as soon as he could. I kept on working relying upon the promise that he would get the goggles. The accident to my eye could not have happened if I had had on goggles. Q. Was it dangerous to do the class of work you were instructed to do without the aid of goggles? Answer: Yes. By goggles I mean glasses substantially like the ones I have in my hand. With goggles of this type I could not have gotten the steel particle in my eye." Plaintiff's contention was that he was relying on this promise. On cross-examination of plaintiff, the record discloses he testified: "This case has been tried twice before. I disremember whether I testified in my cross-

ETHERIDGE v. R. R.

examination before that I did not think I would get the goggles when I asked for them. It did not look like I was going to get them. Q. You did not think you would get them?" The plaintiff objected to this question. The court below sustained the objection, and defendant excepted and assigned error. We think this exception and assignment of error must be sustained.

If plaintiff did not think he would get the goggles it was some evidence for the jury to consider that he assumed the risk of the injury and could not recover of defendant. We think the exclusion prejudicial to defendant. To be sure it was on cross-examination, and defendant did not offer to show what plaintiff's answer would be.

In *State v. Martino*, 192 Pac., 507 (509) (N. Mex.), it is said: "It is further to be noted that this witness was asked this question upon cross-examination, and counsel for appellant were not charged with knowledge of what the answer of the witness would be. He was not appellant's witness. Counsel for appellant, therefore, would not be expected to be able to state to the court what the witness would answer. Under such circumstances the rule requiring a statement by counsel, advising the court of the nature of the testimony which witness would give, has no application. 3 C. J., Appeal and Error, secs. 736, 737."

Ordinarily, the general rule that the record must show what the answer or testimony would have been does not apply under the facts here disclosed. In 3 Corpus Juris, Title "Appeal and Error," sec. 737, p. 827, it is said: "Nor does the general rule apply to a question asked upon the cross-examination of a witness called by his adversary."

Upon examination, we have been unable to find in North Carolina, in applying the general rule, where the question was asked on cross-examination of an adversary and hostile witness. The decision in the *Martino case, supra,* seems to be the "logic of the situation."

For the reasons given, there must be a

New trial.

DEVIN, J., took no part in the consideration or decision of this case.

STACY, C. J., concurs that the judgment ought not to stand, and is further of opinion that upon the present record, which is different from the record on the first trial, the exception to the refusal to nonsuit should be sustained.