CAROLISTA C. FLETCHER v. BURTON H. JONES

No. 424A84

(Filed 5 September 1985)

1. **Vendor and Purchaser § 2.3— contract for sale of land—waiver of closing date —reasonable time for performance**

   A seller who continues to assure the buyer orally that he intends for closing to take place on real property pursuant to the terms of the parties' written sales contract, even though the date for closing contained in the written contract has expired, effectively waives the time provision in the written contract. In such case, one of the parties to the contract must thereafter tender performance, pursuant to the terms of the contract, within a reasonable time.

2. **Vendor and Purchaser §§ 2, 2.3— contract for sale of land—waiver of closing date—tender of performance within reasonable time**

   Where a contract for the sale of realty was contingent upon defendant seller obtaining a divorce; the contract contained no time-is-of-the-essence clause; the parties extended the closing time until 10 March 1981 but defendant continued orally to assure plaintiff buyer after that date that closing would take place as soon as his divorce was final; on 4 August 1981 defendant's attorney advised plaintiff's attorney that defendant's divorce and property settlement were final and defendant was ready to close, but neither party took any action to arrange the closing; defendant contracted to sell the property to a third party for a higher price; on 24 September 1981 plaintiff's attorney received a letter from defendant's attorney that the contract was declared to be null and void; and on 26 September 1981 plaintiff's attorney mailed to defendant's attorney a letter stating plaintiff's intent to consummate the sale and tendering the entire amount of cash due at the closing along with a properly executed promissory note for the balance of the purchase price as required by the contract, it was *held* that (1) defendant waived the 10 March closing date by continuing to assure plaintiff of his willingness to perform the contract after that date had passed, and (2) the trial court's findings were sufficient to support its conclusion that plaintiff made a full and sufficient tender within a reasonable time after being notified that defendant was ready to close.

3. **Vendor and Purchaser § 5— specific performance of land sale contract—no entitlement to special damages**

   Plaintiff was not entitled to recover special damages for development costs in addition to obtaining specific performance of a contract for the sale of land.

Justice MITCHELL dissenting in part and concurring in part.

Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL by plaintiff as a matter of right pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, 69 N.C. App. 431, 317 S.E. 2d 411 (1984), *Becton, J.*, dissenting, in which judgment for plaintiff entered by *Stevens, III, J.*, at the 24 January 1983 civil session of DARE Superior Court and signed out of term by consent of the parties on 17 March 1983 was affirmed in part.

*Aycock & Spence, by W. Mark Spence, for plaintiff-appellant.*

*Pritchett, Cooke & Burch, by W. W. Pritchett, Jr., for defendant-appellee.*

FRYE, Justice.

[1] The issues on this appeal are, first, whether a defendant-seller who continues to orally reassure plaintiff-buyer that he, seller, intends for closing to take place on certain real property pursuant to the terms of the parties' written sales contract, even though the date for closing contained in the written contract has expired, effectively waives the time provision for closing in that contract? Secondly, if such oral reassurances by the seller constitute an effective waiver of the time for closing contained in the contract, must one of the parties to the contract thereafter tender performance, pursuant to the terms of the contract, within a reasonable time? Our answer is yes to both issues.

On 18 August 1980, plaintiff buyer and defendant seller entered into a contract in which plaintiff was to purchase for $45,000 certain real property from defendant, such property being located in Dare County, North Carolina. The contract provided for a closing date of 9 January 1981, and contained the following condition: "Contract is subject to seller obtaining absolute divorce from present spouse or present spouse agreeing to execute deed." Neither condition was met prior to the closing date, and on 29 January 1981, the parties entered into an addendum to the original contract, which extended the closing date to 10 March 1981. Closing did not take place on 10 March 1981 because the condition again was not satisfied.

No other written extensions of time were executed by the parties; however, on 23 March 1981, defendant, through his attorney, Mr. Crouse Gray, requested an additional extension of time to close the transaction. Plaintiff, through her attorney, Mr. Charlie Aycock, agreed to an extension. On 26 March 1981, Mr. Aycock sent a Note-A-Gram to Mr. Gray, suggesting that "You [Mr. Gray] just type on the bottom of the original Extension the fact that it is extended for another ninety days. And submit same to your client for signature." A written addendum extending closing to 10 June 1981 was prepared by defendant's attorney and forwarded to defendant, who did not execute the document.

Subsequent to these written communications in March 1981, plaintiff's attorney received oral assurance from defendant's attorney that defendant intended to close soon. Plaintiff's attorney kept her abreast of the status of the contract and continued to assure her that defendant still intended to go through with closing. Plaintiff and her husband also spoke with defendant subsequent to 10 March 1981. On one of these occasions, defendant said to plaintiff that "he wasn't ready to close on the contract but that he would be ready fairly soon." On another occasion, plaintiff's husband asked defendant, "When are we going to be able to close?" Defendant told him "that the divorce wasn't final, and that it would have to be subsequent to the divorce before anything could happen."

On 4 August 1981, Mr. Gray, defendant's attorney, contacted Mr. Aycock, plaintiff's attorney, by telephone and advised that the divorce and property settlement between defendant and his wife were final and that the defendant was then ready to close according to the terms of the original contract. Neither party took any action subsequent to this communication to arrange closing on the property.

During the third week in September 1981, defendant accepted an offer for $67,500 from a third party to purchase the same property described in plaintiff's contract. Both prior and subsequent to accepting this offer, defendant gave no indication to plaintiff, plaintiff's attorney, or his own attorney, that he did not intend to consummate the transaction with plaintiff according to the terms within the original contract.

On 24 September 1981, plaintiff's attorney received a letter from defendant's attorney returning plaintiff's $1,000 earnest money deposit and stating that the "contract is hereby declared to be null and void." On 26 September 1981, plaintiff's attorney mailed to defendant's attorney a letter stating plaintiff's intent to enforce the contract according to its original terms, together with a promissory note and deed of trust as required by the contract.

Thereafter, on 28 September 1981, plaintiff filed a complaint together with a lis pendens on the real property owned by defendant. Plaintiff sought specific performance and special damages. Defendant's answer pleaded as a defense the statute of frauds and "plaintiff's failure to tender performance a reasonable time after all conditions and extensions of the contract had expired," thus rendering the contract null and void. Defendant also counterclaimed, alleging that plaintiff's filing of a lis pendens constituted a cloud upon defendant's title, causing damage in the amount of $50,000. The trial court, sitting without a jury, granted plaintiff's request for specific performance and ordered defendant to convey the property. Plaintiff's claim for special damages was denied. Defendant's counterclaim was also denied.

Defendant appealed and plaintiff cross-appealed from the trial court's judgment. The Court of Appeals affirmed in part and remanded for further findings of fact and conclusions of law on the question of whether a reasonable time had elapsed between the 10 March 1981 closing date and the time of defendant's termination. However, plaintiff's cross-appeal from the denial of special damages was denied. Plaintiff timely gave notice of appeal pursuant to G.S. 7A-30(2), based upon a dissenting opinion from that court.

[2] Plaintiff argues that the Court of Appeals erroneously concluded that the parties to the contract had not entered into a valid oral modification extending the date for closing past the 10 March 1981 deadline contained in the prior written addendum. Plaintiff contends that the "facts taken together show that at least on August 4 both the plaintiff and the defendant felt that a reasonable time past the March 10 closing date had not yet expired and that the contract was still open and valid between the parties." Thorough analysis of the facts and applicable law convince this Court that plaintiff's argument is essentially correct.

Fletcher v. Jones

However, our approach to the resolution of this issue is slightly, though significantly, different from that employed by plaintiff or the Court of Appeals.

Both parties and the court below agree that the parties' written agreement of 29 January 1981 effectively extended the date for closing to 10 March 1981. However, the Court of Appeals rejected plaintiff's argument that "defendant further modified the contract by virtue of his conversations with plaintiff between 10 March and 4 August 1981, indicating his continued willingness to convey the land as soon as his divorce became final." *Fletcher v. Jones*, 69 N.C. App. at 435, 317 S.E. 2d at 414. The court below characterized such oral representations as "unilateral, oral statements . . . insufficient to constitute a valid modification of the contract closing date." *Fletcher*, 69 N.C. App. at 435-36, 317 S.E. 2d at 414. That court correctly observed that the parties' contract contained no time-is-of-the-essence clause and that absent such a clause the law generally allows the parties a reasonable time after the date set for closing to complete performance. *Scarborough v. Adams*, 264 N.C. 631, 142 S.E. 2d 608 (1965). Therefore, it was concluded that such conversations were some evidence "relevant to the question of whether defendant acted within a reasonable time after the March closing date." *Fletcher*, 69 N.C. App. at 436, 317 S.E. 2d at 415.

We agree with the Court of Appeals that the contract in this case was not implicitly or explicitly governed by a time-is-of-the-essence clause, and that the parties had a reasonable time after the 10 March 1981 closing date to complete performance.[1]

Generally, when time is not of the essence, the date selected for closing can be viewed as

---

1. There is some question of whether the date contained within the contract for closing is also applicable to the condition precedent. Neither party contends that it is not. Since the contract is silent respecting this matter, we must conclude that the closing date also governs the time within which the condition precedent must be fulfilled. If the condition precedent were of crucial import to either or both parties and needed to be fulfilled by a certain date, other than that set for closing, a separate date should have been explicitly included to govern the condition precedent, along with a separate time-is-of-the-essence provision if necessary. It would then have been clear that this particular condition, separate from the act of closing, must be strictly performed by a different date. *See Kakalik v. Bernardo*, 184 Conn. 386, 439 A. 2d 1016 (1981); *see also* R. Cunningham, W. Stoebuck and D. Whitman, *The Law of Property* § 10.9, at 672 (1984).

an approximation of what the parties regard as a reasonable time under the circumstances of the sale. The vendor, therefore, had a right to expect that the vendees would be ready *about* that time. The vendees, on the other hand, were under an obligation to make the necessary efforts to consummate their purchase within the period they had agreed upon.

*Drazin v. American Oil Company,* 395 A. 2d 32, 34 (D.C. Ct. App. 1978) (emphasis in original) (citations omitted).

We do not concur in the Court of Appeals' determination, however, that the date set for performance was strictly confined to the 10 March 1981 date contained in the executed addendum which extended the original date of closing. Neither do we agree that the reasonable time for performance was to be computed from that date. Instead, we are persuaded that the oral representations and assurances by defendant to plaintiff of defendant's willingness to perform subsequent to 10 March 1981 indicated an intent on defendant's part to waive the 10 March 1981 date and further extend the time in which the parties could perform. A waiver can be defined as an "excuse of a non-occurrence or of a delay in the occurrence of a condition of a duty." E. Farnsworth, *Contracts* § 8.5, at 561 (1982);[2] *see Tantillo v. Janus,* 87 Ill. App. 3d 231, 42 Ill. Dec. 291, 408 N.E. 2d 1000 (1980); *Kimm v. Andrews,* 270 Md. 601, 313 A. 2d 466 (1974). The basis for a waiver can be inferred from conduct or expressed in words. E. Farnsworth, *supra,* at 562. "[C]onduct such as continuing performance with knowledge that the condition has not occurred might be questionable as the manifestation needed for a modification but sufficient for waiver." E. Farnsworth, *supra,* at 562.

The facts in the present case undeniably indicate that defendant and defendant's attorney continued to orally reassure and represent to plaintiff and her husband that defendant intended to close and consummate the transaction beyond the 10 March 1981 closing date. In fact, as late as 4 August 1981, nearly five months

---

2. Professor Farnsworth in his treatise explains why the courts have a fondness for treating certain conduct as a "waiver" rather than a "modification." By characterizing the conduct as a "waiver" rather than as a "modification," a court may avoid three requirements for a modification: the requirement of assent, the requirement of a writing under the Statute of Frauds, and the requirement of consideration or of detrimental reliance.

after the expected date of closing, defendant's attorney contacted plaintiff's attorney by telephone to inform plaintiff that defendant considered the contract to be "in full force and effect." Plaintiff's attorney testified on direct, "I specifically recall . . . Mr. Gray contacted me by phone and advised me that Mr. Jones had settled with his wife, and they were now ready to convey the property, and for me to advise my client they were ready to close." This evidence certainly supports the conclusion that defendant did indeed intend to perform well beyond the earlier projected date for closing.

After defendant had waived the closing date beyond 10 March 1981, what were the parties' contractual duties when defendant's attorney notified plaintiff's attorney on 4 August 1981 that "they were ready to close?" According to basic principles of hornbook law, the parties are thereafter required to tender performance concurrently. 3A Corbin on Contracts § 663, at 177 (1960). This concurrent performance on the part of both parties in the context of real estate transactions means "that the seller will deliver a deed and simultaneously the buyer will pay part or all of the price." E. Farnsworth, *Contracts* § 8.11, at 585 (1984). These acts are normally performed at the closing or settlement.

The legal effect of these concurrent conditions of performance is explained by Professor Corbin in his treatise as follows:

> When two performances, agreed equivalents, are to be exchanged simultaneously, a tender of his performance by either one of the parties is a condition precedent to the duty of performance by the other. This is a case of so-called concurrent conditions. . . . If the stated time is not of the essence, then each party has a 'reasonable time' within which he can tender his performance and enforce the contract.

6 Corbin on Contracts § 1258, at 26 (1962).

However, there does come a point in time when a party's tender would be too late. "At that time the legal duties of the two parties will be simultaneously discharged." 3A Corbin on Contracts, *supra*, at 178.

The only tender of performance in the present case was by plaintiff on 26 September 1981 when plaintiff's attorney advised defendant's attorney that plaintiff intended to enforce the con-

tract and also tendered the entire amount of cash due at closing, along with a properly executed promissory note for the balance of the purchase price as required by the contract. However, this tender of performance by plaintiff was almost seven weeks after 4 August 1981, the date that plaintiff's attorney was advised that defendant was ready to close on the property. Since time was not of the essence in the parties' contract, the question then becomes whether plaintiff had tendered her performance within a reasonable time after 4 August 1981.

In *Yancey v. Watkins*, 17 N.C. App. 515, 195 S.E. 2d 89, *cert. denied*, 283 N.C. 394, 196 S.E. 2d 277 (1973), the Court of Appeals, quoting extensively from earlier cases decided by this Court, set forth the following legal principles relevant to the determination of whether a reasonable amount of time has elapsed in situations like the present:

> In *Etheridge v. R.R.*, 209 N.C. 326, 183 S.E. 2d 539 (1936), we find:

> While it is a maxim of English law that "how long a 'reasonable time' ought to be is not defined in law, but is left with the discretion of the judge" (Coke Litt. 50), this applies only where the facts are admitted, or clearly proved, and 'Where the question of reasonable time is a debatable one, it must be referred to the jury for decision.' Hoke, J., in *Holden v. Royall*, 169 N.C. 676 (678), said: 'And, in this State, authority is to the effect that, where this question of reasonable time is a debatable one, it must be referred to the jury for decision.' (Citations.)

> In *Trust Co. v. Insurance Co.*, 199 N.C. 465, 154 S.E. 743 (1930), we find:

> * * * If no time for the performance of an obligation is agreed upon by the parties, then the law prescribes that the act must be performed within a reasonable time. Reasonable time is generally conceived to be a mixed question of law and fact. 'If, from the admitted facts, the court can draw the conclusion as to whether the time is reasonable or unreasonable by applying to them a legal principle or a rule of law, then the question is one of law. But if different inferences may be drawn, or the circumstances are numerous and complicated,

and such that a definite legal rule cannot be applied to them, then the matter should be submitted to the jury. It is only when the facts are undisputed and different inferences cannot be reasonably drawn from them, that the question ever becomes one of law.' (Citations.)

In *Claus v. Lee*, 140 N.C. 552, 53 S.E. 433 (1906), the court said:

* * * The result of our examination leads us to the conclusion that what is 'reasonable time' is generally a mixed question of law and fact, not only where the evidence is conflicting, but even in some cases where the facts are not disputed; and the matter should be decided by the jury upon proper instructions on the particular circumstances of each case. (Citations.)

*Id.* at 519-20, 195 S.E. 2d at 93.

In the present case, the trial was by the judge without a jury.

In that setting the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. *Knutton v. Cofield*, 273 N.C. 355, 160 S.E. 2d 29 (1968). The trial judge acts as both judge and jury and considers and weighs all the *competent* evidence before him. *Hodges v. Hodges*, 257 N.C. 774, 127 S.E. 2d 567 (1962). If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected. *Hodges v. Hodges, supra.* . . . Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts. *Blackwell v. Butts*, 278 N.C. 615, 180 S.E. 2d 835 (1971).

*Williams v. Pilot Life Insurance Co.*, 288 N.C. 338, 342, 218 S.E. 2d 368, 371 (1975) (emphasis original).

The Court of Appeals decided in the present case that the judge did not make adequate findings of fact or conclusions of law regarding whether a reasonable time had elapsed. The trial judge concluded as a matter of law:

2. That this contract was valid, and legally binding on both plaintiff and the defendant, the same being in full force and effect according to its terms, through and including September 26, 1981.

3. That on September 26, 1981 the plaintiff made full and sufficient tender of the purchase price pursuant to the terms of the said contract.

4. That the defendant failed and refused to comply with the terms of said contract and did, as a matter of law, breach said contract.

5. That the plaintiff is entitled to specific performance of said contract according to its terms.

Although the trial judge did not specifically state within his conclusions of law that plaintiff had tendered performance within a "reasonable time," we view his legal conclusions, particularly number 3, to be correct. Our view of the record further indicates that the following findings of fact, which are supported by the evidence, are sufficient to support the foregoing conclusions of law:

21. That from the execution of the original contract in August of 1980 through September 24, 1981 the defendant, Burton Jones, had never advised anyone, and in particular had not advised his attorney, Crouse Gray, the plaintiff's attorney, or the plaintiff that he had any intention of not complying with the contract and conveying the property described therein to the plaintiff.

. . . .

23. That through September 24, 1981, when the defendant advised his attorney to attempt to cancel the contract, his attorney, Crouse Gray, was under the impression that the transaction would close according to the terms of the original contract.

. . . .

27. That the escrow deposit paid by the plaintiff to the defendant and deposited in Mr. Crouse Gray's Trust Account was retained in trust by Mr. Gray until September 24, 1981;

that the defendant at no time prior to September 24, 1981 instructed Mr. Gray to return the escrow deposit to the plaintiff herein.

28. That on or about September 17, 1981, Mr. Ken Smith, real estate broker for Joe Lamb, Jr. & Associates Realty, was contacted by a Mr. Vodrey who expressed an interest in purchasing the three lots described in the Complaint filed herein; that Mr. Ken Smith contacted the defendant who advised him that he would like to sell the three lots and that he would accept the purchase price of $67,500.00 for same; that Mr. Smith prepared an Offer to Purchase and Contract reflecting a total purchase price of $67,500.00 and forwarded same to Mr. Vodrey, who signed and returned it to Mr. Smith; that Mr. Smith forwarded said offer to defendant herein pursuant to the defendant's earlier agreement with Mr. Smith to accept the purchase price of $67,500.00.

29. *That prior to receiving said offer to purchase the lots described in the Complaint filed herein for $67,500.00, the defendant represented to all concerned that he intended to fully comply with the original contract between the parties.* That he notified no one, including his own attorney, that he intended otherwise until after he received an offer of purchase on the property for $67,500.00.

. . . .

34. That up until approximately the third week in September, when the defendant received the offer from Mr. Vodrey to purchase the subject property for $67,500.00, the defendant intended to convey the property to the plaintiff herein pursuant to the terms of the original contract described above.

(Emphasis added.)

Different inferences could possibly be drawn from the evidence presented to the judge. From this evidence, however, the judge made findings of fact that support his conclusion of law that plaintiff "made full and sufficient tender" within a reasonable time after being notified that defendant was ready to close. Although it would have been more desirable for the judge to include within his conclusions of law that plaintiff's tender of performance

was within a "reasonable time," we do not think that omission alone is fatal to the validity and correctness of the judgment.

[3]   The Court of Appeals also held that plaintiff's claim for special damages should be denied. We agree with that holding. "To award plaintiff specific performance as well as compensate for her development costs would be to place her in a better position than she would have occupied had defendant conveyed." *Fletcher*, 69 N.C. App. at 437, 317 S.E. 2d at 415; *see* D. Dobbs, *Remedies* § 12.8, n. 73 (1973).

Accordingly, that portion of the Court of Appeals' opinion remanding the case to the trial court for further findings and conclusions of law concerning whether a reasonable time had elapsed is reversed. However, we affirm the court's denial of special damages to plaintiff.

Reversed in part; affirmed in part.

Justice BILLINGS did not participate in the consideration or decision of this case.

Justice MITCHELL dissenting in part and concurring in part.

Like the Court of Appeals, I am convinced that:

The trial court made findings of fact concerning the passage of time between the March closing date and the time of defendant's termination, but made no adequate findings of fact or conclusions of law concerning whether a reasonable time had elapsed. Because the trial court failed to apply the proper legal standard to the facts in reaching its judgment, the case must be remanded for further proceedings . . . .

*Fletcher v. Jones*, 69 N.C. app. 431, 436, 317 S.E. 2d 411, 415 (1984). Therefore, I dissent from that portion of the opinion of the majority of this Court reversing that part of the decision of the Court of Appeals which remanded this case to the trial court for further findings and conclusions of law concerning whether a reasonable time had elapsed. Otherwise, I concur in the opinion of the majority.