MICHAEL HARRIS AND LOUISE HARRIS, PLAINTIFFS v. RICHARD STEWART, BARBARA STEWART, AND YORK SIMPSON UNDERWOOD, L.L.C., DEFENDANTS

No. COA07-1174

(Filed 7 October 2008)

1. **Real Property— reasonable time to perform rule—failure to include time of essence provision—appraisal not completed by date specified in contract—pre-closing conditions**

     The trial court did not err in a case arising out of a contract for the sale of real property by ordering plaintiffs' earnest money deposit plus any accrued interest held in escrow be refunded to plaintiffs even though defendants contend plaintiffs did not have an option to terminate the pertinent contract under Section 13(f) since an appraisal was not completed on or before 15 December 2005 as required in the contract because: (1) there is a well-settled exception that the reasonable time to perform rule applies to contracts for the sale of real property in the absence of a "time is of the essence" provision, and the dates stated in an offer to purchase and contract serve only as guidelines without being

HARRIS v. STEWART

[193 N.C. App. 142 (2008)]

binding on the parties; (2) although the reasonable time to perform rule has generally arisen in the context of missed closing dates, our Supreme Court has stated that this rule also applies to the performance of pre-closing conditions; (3) in the instant case the appraisal contingency specified a 15 December 2005 deadline, but did not contain a time is of the essence provision applicable to such date, nor is there any evidence demonstrating an issue of fact as to whether time was of the essence with respect to this date, thus making the reasonable time to perform rule applicable; (4) the reason plaintiffs failed to meet Section 13(f)'s 15 December 2005 deadline was that the appraiser waited until 20 December 2005 to sign and deliver the appraisal report to the bank, and there was no evidence that plaintiffs delayed or tarried in the completion of the contract; and (5) plaintiffs' five-day delay in completing the appraisal was reasonable as a matter of law.

**2. Real Property— option to terminate contract—buyers' failure to directly arrange or pay for appraisal**

The trial court did not err in a case arising out of a contract for the sale of real property by concluding plaintiff buyers had the option to terminate the contract under Section 13(f) even though plaintiffs did not directly arrange or pay for the appraisal because: (1) the express terms of Section 13(f) provided that the buyers shall arrange to have the appraisal completed, and there was no language in this clause indicating that the buyers must personally hire the appraiser or directly arrange the appraisal for such appraisal to satisfy the conditions of the clause; (2) there was no legal significance to the fact that the appraisal was arranged through the buyers' lender rather than by the buyers personally; (3) defendants produced no evidence for their proposition that plaintiffs did not pay for the appraisal, and it can reasonably be inferred that the cost of the appraisal was either taxed to plaintiffs through their application fees or that the cost would later be charged to plaintiffs at closing by their lender; and (4) assuming arguendo there was a genuine issue of fact as to whether the lender paid for the appraisal, this fact was immaterial since an appraisal is no less valid simply based on the fact a third party absorbs the cost of such service.

Appeal by defendants from order entered 23 April 2007 by Judge Abraham Penn Jones in Orange County Superior Court. Heard in the Court of Appeals 6 March 2008.

*Bagwell, Holt, Smith, Tillman & Jones, P.A., by Nathaniel C. Smith, John G. Miskey, IV, and Christopher A. Crowson, for plaintiff appellees.*

*Ragsdale Liggett PLLC, by George R. Ragsdale, Robert J. Ramseur, Jr., and Ashley Huffstetler Campbell, for defendant appellants.*

*Martin & Gifford, PLLC, by G. Wilson Martin, Jr., for N.C. Association of Realtors, Inc., amicus curiae.*

McCULLOUGH, Judge.

This appeal arises from a dispute concerning a contract for the sale and purchase of certain real property located in Chapel Hill. Defendants, Richard and Barbara Stewart, appeal from the entry of summary judgment in favor of plaintiffs, Michael and Louise Harris, ordering that plaintiffs' earnest money deposit, plus any accrued interest held in escrow by York Simpson Underwood, L.L.C. ("York Simpson Underwood") be refunded to plaintiffs. For the reasons stated herein, we affirm.

The relevant facts are as follows: On 11 November 2005, plaintiffs, as buyers, executed an Offer to Purchase and Contract ("the Contract") defendants' residence ("the Stewart property") located at 7601 Talbryn Way in Chapel Hill for $2,100,000. Shortly thereafter, plaintiffs mailed to York Simpson Underwood, defendants' escrow agent, the signed Contract and $40,000 in earnest money to be held in escrow. On 17 November 2005, defendants, as sellers, executed the Contract.

Section 13(f) of the Contract provided the following appraisal contingency clause:

The property must appraise at a value equal to or exceeding the purchase price or, at the option of the Buyer, the contract may be terminated and all earnest monies shall be refunded to the Buyer. If this contract is not subject to a financing contingency requiring an appraisal, Buyer shall arrange to have the appraisal completed on or before <u>December 15, 2005</u>. The cost of the appraisal shall be borne by Buyer.

Although the Contract was not contingent on plaintiffs obtaining financing, plaintiffs applied for a loan with Wachovia Mortgage Company ("Wachovia"). Wachovia, by and through Fidelity Residential

**HARRIS v. STEWART**

[193 N.C. App. 142 (2008)]

Services, retained Arthur Dec of Dec Appraisal Service to perform an appraisal of the property. On or about 13 December 2005, Arthur Dec ("Mr. Dec") of Dec Appraisal Service sent Wachovia a letter, stating that he had appraised the Stewart property. The Appraisal Report ("the Dec Appraisal") lists 12 December 2005 as the effective date of the appraisal; however, Mr. Dec did not sign, seal, and deliver this report to Wachovia until 20 December 2005. Thus, the Dec Appraisal was not fully completed until 20 December 2005. Mr. Dec valued the Stewart property at $1,900,000, which was $200,000 less than the purchase price.

On 20 December 2005, plaintiffs received the Dec Appraisal report via email. That same day, plaintiffs mailed defendants a copy of the Dec Appraisal and a letter, stating that plaintiffs wished to terminate the Contract pursuant to the appraisal contingency clause in Section 13(f) of the Contract. The letter also requested that the $40,000 earnest money be refunded.

Defendants did not refund the $40,000 earnest money deposit. On 13 March 2006, plaintiffs filed suit against defendants and York Simpson Underwood, seeking entry of a judgment, declaring that the Contract had been terminated as a matter of law and ordering that defendant York Simpson Underwood release all escrow funds to plaintiffs. On 12 May 2006, defendants filed counterclaims for breach of contract and specific performance. Defendants maintained that they attended the closing ready, willing, and able to close, and that plaintiffs forfeited their earnest money deposit by refusing to close. Defendants contended that they were entitled to recover the difference between the Contract price and the fair market value of the Stewart property at the time of the breach, plus interest, consequential damages, and the forfeited earnest money deposit.

On 12 January 2007, defendants sold the Stewart property for $1,800,000, $300,000 less than the purchase price under the Contract. On 7 March 2007 and 9 March 2007, respectively, plaintiffs and defendants filed cross motions for summary judgment. These motions were heard on 26 March 2007.

On 23 April 2007, the trial court entered a judgment, granting plaintiffs' motion for summary judgment, denying defendants' motion for summary judgment, and declaring that "Plaintiffs properly terminated the contract for cause on December 20, 2005[, and] [p]laintiffs are entitled to a refund of the $40,000.00 in escrow money . . . plus any interest accrued thereon[.]" From this judgment, defendants appeal.

Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). The party moving for summary judgment has the burden of showing that no material issue of fact exists. *Lexington State Bank v. Miller*, 137 N.C. App. 748, 751, 529 S.E.2d 454, 455-56, *disc. review denied*, 352 N.C. 589, 544 S.E.2d 781 (2000). Once the moving party has met its burden, "the nonmoving party may not rely on the mere allegations and denials in his pleadings but must by affidavit, or other means provided in the Rules, set forth specific facts showing a genuine issue of fact for the jury; otherwise, 'summary judgment, if appropriate, shall be entered against [the nonmoving party].' " *In re Will of McCauley*, 356 N.C. 91, 101, 565 S.E.2d 88, 95 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e)).

## I. Reasonable Time to Perform Rule

**[1]** Defendants first contend that plaintiffs did not have an option to terminate the Contract pursuant to Section 13(f) of the Contract because the Dec Appraisal was not completed on or before 15 December 2005. Because we conclude that the reasonable time to perform rule applies to the pre-closing act at issue, we disagree.

As a general rule, the language of a contract should be interpreted as written. *Kroger Ltd. P'ship v. Guastello*, 177 N.C. App. 386, 390, 628 S.E.2d 841, 844 (2006); however, there is a well-settled exception, the "reasonable time to perform rule," that applies to contracts for the sale of real property. With respect to these realty sales contracts, it has long been held that in the absence of a "time is of the essence" provision, time is not of the essence, the dates stated in an offer to purchase and contract agreement serve only as guidelines, and such dates are not binding on the parties. *Douglass v. Brooks*, 242 N.C. 178, 185, 87 S.E.2d 258, 263 (1955) (distinguishing an option contract, in which time is always of the essence, from a sales contract, in which time is not of the essence in the absence of language to that effect).

Although the "reasonable time to perform" rule has generally arisen in the context of missed closing dates, our Supreme Court has stated that this rule also applies to the performance of pre-closing conditions:[1]

---

1. A condition precedent is a fact or event that must exist or occur before there is a right to immediate performance. *Cox v. Funk*, 42 N.C. App. 32, 34, 255 S.E.2d 600, 601 (1979).

**If the condition precedent were of crucial import to either or both parties and needed to be fulfilled by a certain date, other than that set for closing, [1] a separate date should have been explicitly included to govern the condition precedent, along with [2] a separate time-is-of-the-essence provision** if necessary. It would then have been clear that this particular condition, separate from the act of closing, must be strictly performed by a different date.

*Fletcher v. Jones*, 314 N.C. 389, 393 n.1, 333 S.E.2d 731, 734 n.1 (1985) (emphasis added).

In *Gaskill v. Jennette Enters., Inc.*, 147 N.C. App. 138, 141, 554 S.E.2d 10, 11 (2001), *disc. review denied*, 355 N.C. 211, 559 S.E.2d 801 (2002), a contract for the sale of real property was subject to the condition that the buyer obtain financing by a certain date. The contract contained a time is of the essence provision at the end of the contract, but it was ambiguous as to whether this provision was intended to apply to the deadline for the financing contingency or if it was only intended to apply to the date of closing. *Id.* at 139, 554 S.E.2d at 11. The buyer obtained a loan commitment after the deadline specified for the financing contingency, but prior to the date specified for closing. *Id.* at 139, 554 S.E.2d at 12. The seller thereafter refused to close. *Id.* The buyer sued for specific performance, and the trial court entered summary judgment in favor of the seller. *Id.* at 140, 554 S.E.2d at 12. In light of the *Fletcher* footnote above, this Court reversed. *Id.* at 142, 554 S.E.2d at 13. We reasoned that the trial court could not hold as a matter of law that time was of the essence with respect to the pre-closing deadline where it was ambiguous whether the time is of the essence language applied to the pre-closing condition. *Id.* Thus, implicit in our holding is the proposition that in the absence of a clear time is of the essence provision, the reasonable time to perform rule applies to pre-closing conditions, even where an express deadline for the pre-closing condition is provided. *See id.*; *see also Wolfe v. Villines*, 169 N.C. App. 483, 489, 610 S.E.2d 754, 759 (2005) ("As time was not of the essence in the contract, the failure to complete the required survey and close by 31 January 2002 does not vitiate the contract. The question rather is one of the reasonableness of the time to complete the contract.").

Here, the appraisal contingency specified a 15 December 2005 deadline, but did not contain a time is of the essence provision applicable to such date nor is there any evidence demonstrating an issue of fact as to whether time was of the essence with respect to this

date. Therefore, the reasonable time to perform rule is applicable to this pre-closing condition.

Having decided that plaintiffs had a reasonable time from 15 December 2005 to arrange an appraisal of the Stewart property, we must determine whether the trial court properly concluded that the five-day delay in this case was "reasonable" as a matter of law. "[D]etermination of 'reasonable time' is generally a mixed question of law and fact and thus for the jury[.]" *Yancey v. Watkins*, 17 N.C. App. 515, 520, 195 S.E.2d 89, 93, *cert. denied*, 283 N.C. 394, 196 S.E.2d 277 (1973). "[T]here are[,] [however,] cases which hold that when facts are simple and admitted and only one inference can be drawn, the determination of 'reasonable time' is a question of law." *Id.* (emphasis omitted).

For instance, in *Wolfe*, we held that a trial court properly concluded that a delay of three weeks in completing a survey was reasonable as a matter of law where there was no evidence that the plaintiff "delayed or tarried" in the completion of the contract. *Wolfe*, 169 N.C. App. at 489, 610 S.E.2d at 759. In the instant case, plaintiffs arranged for Mr. Dec to inspect the Stewart property on 12 December 2005. Likewise, the effective date listed on the Dec Appraisal is 12 December 2005. The reason that plaintiffs failed to meet Section 13(f)'s 15 December 2005 deadline was that Mr. Dec waited until 20 December 2005 to sign and deliver the appraisal report to Wachovia. There is no evidence that plaintiffs "delayed or tarried" in the completion of the Contract. Given our decision in *Wolfe* that the three-week delay in completing the survey was reasonable as a matter of law, it is clear that the trial court properly concluded then that the mere five-day delay in completing the appraisal was reasonable as a matter of law in this case. Thus, defendants' argument that plaintiffs did not have an option to terminate the Contract pursuant to Section 13(f) because the Dec Appraisal was not completed until 20 December 2005 is without merit.

## II. Arrangement of Appraisal

[2] Next, defendants contend that plaintiffs did not have an option to terminate the Contract pursuant to Section 13(f) because plaintiffs did not directly arrange for the Dec Appraisal or pay for such appraisal. We disagree.

Conditions precedent are not favored by the law. *Craftique, Inc. v. Stevens and Co., Inc.*, 321 N.C. 564, 566, 364 S.E.2d 129, 131 (1988). As such, the provisions of a contract will not be construed as condi-

tions precedent in the absence of language clearly requiring such construction. *In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 375-76, 432 S.E.2d 855, 859 (1993).

Here, the express terms of Section 13(f) simply provide, "[b]uyer shall arrange to have the appraisal completed[.]" There is no language in this clause indicating that the buyer must personally hire the appraiser or directly arrange the appraisal for such appraisal to satisfy the conditions of the clause. Absent an express term in Section 13(f), requiring that the buyer personally or directly hire the appraiser as a condition precedent, we attach no legal significance to the fact that the Dec Appraisal was arranged through the buyer's lender rather than by the buyer personally. Likewise, defendants do not cite case law from any jurisdiction to support their contention that an appraisal obtained by a lender does not suffice for the purposes of an appraisal contingency clause.

Next, Section 13(f) of the Contract, provides "[t]he cost of appraisal shall be borne by Buyer." Defendants contend on appeal that plaintiffs did not "arrange" the Dec Appraisal because they did not pay for such appraisal. Defendants have produced no evidence in support of this proposition. The evidence of record shows that plaintiffs applied for a mortgage with Wachovia, and as part of the loan application process, Wachovia arranged for the Dec Appraisal. It can reasonably be inferred then that the cost of the appraisal was either taxed to plaintiffs through their application fees or that the cost would later be charged to plaintiffs at closing.

However, assuming *arguendo* that there is a genuine issue of fact as to whether Wachovia paid for the Dec Appraisal, this fact is immaterial to our analysis. Given that an appraisal is no less valid simply because a third party absorbs the cost of such service, the only logical reading of the cost allocation provision of Section 13(f) is that it was intended to allocate the cost of the appraisal, if any, as between the buyer and seller. Thus, as long as some party other than the seller paid for the Dec Appraisal, the fact that a third party paid for the appraisal is immaterial to the Contract. If, in fact, Wachovia absorbed the cost of the Dec Appraisal, then there is simply no cost to be allocated to the buyer for purposes of the cost allocation provision of Section 13(f). Any other reading of this cost provision would defy common sense.

Thus, defendants' contention that plaintiffs did not have an option to terminate the Contract pursuant to Section 13(f) because

plaintiffs did not personally arrange the Dec Appraisal or pay for such appraisal is without merit.

In sum, the undisputed evidence of record shows that plaintiffs appraised the Stewart property within a reasonable period of time following the 15 December 2005 deadline and such property appraised at a value less than the purchase price. The trial court properly concluded that plaintiffs had the option to terminate the Contract pursuant to the express terms of Section 13(f) of the Contract and that plaintiffs are entitled to a refund of their earnest money deposit plus accrued interest. Accordingly, we affirm the trial court's grant of plaintiffs' motion for summary judgment and denial of defendants' motion for summary judgment.

Affirmed.

Judges STEELMAN and ARROWOOD concur.