JIM LORENZ, INC. D/B/A SAPPHIRE-TOXAWAY RESORT PROPERTIES, Plaintiff v.
SHIRLEY S. O'HAIRE and husband, MICAHAEL O'HAIRE, Defendant

No. COA10-984

(Filed 21 June 2011)

**1. Real Property— realtor's commission—buyer meeting conditions—notice of defect in title**

Plaintiff-realtor did not produce a buyer who met all of the conditions of the purchase agreement and was not entitled to a commission from the sale of the certain premises where an outside party (Smith) exercised a right of first refusal and the buyer (Legasus) did not provide timely notice of a title defect under the purchase agreement. Although plaintiff contended that the first refusal was within the chain of title and was not a marketable title defect as contemplated by the agreement, the plain and unambiguous language of the agreement did not distinguish between defects within and those without the chain of title.

**2. Real Property— realtor's commission—breach of purchase agreement—right of first refusal**

Plaintiff-realtor was not entitled to a commission under the terms of a fee agreement where an outside party came forward to exercise a right of first refusal. Defendants were not responsible for a breach of the terms of the purchase agreement.

**3. Appeal and Error— cross-assignment of error—denial of summary judgment—dismissed**

A cross-assignment of error from the denial of summary judgment was dismissed.

Appeal by Defendants from order entered 8 April 2010 by Judge Zoro J. Guice, Jr. in Jackson County Superior Court. Heard in the Court of Appeals 23 February 2011.

*James M. Kimzey, for Plaintiff-Appellee.*

*Roberts & Stevens, P.A., by Ann-Patton Hornthal and F. Lachicotte Zemp, Jr., for Defendants-Appellants.*

BEASLEY, Judge.

Shirley S. O'Haire and Michael O'Haire ("Defendants") appeal from the trial court's decision to deny their motions for a directed verdict and for a judgment notwithstanding the verdict. For the reasons stated herein, we reverse the trial court's order.

Defendants own approximately 480 acres of undeveloped land in Jackson County, North Carolina. In 2006, Jim Lorenz, Inc. d/b/a Sapphire-Toxaway Resort Properties ("Plaintiff") contacted Defendants to learn of their interest in selling the subject premises to developer, Legasus of North Carolina, LLC ("Legasus"). On 2 May 2006, Defendants entered into a "Disclosure And Fee Agreement For Non-Listed Property Sale" ("fee agreement") with Jim Lorenz, Inc. d/b/a Sapphire-Toxaway Resort Properties ("Plaintiff").

The fee agreement stated that Plaintiff was acting as a buyer's agent for Legasus. The terms of the agreement also provided that "[w]hen [Defendants accept] an unconditional offer from Buyer or when all conditions have been met following the [Defendants'] acceptance of a conditional offer from [Legasus], then [Defendants] shall pay [Plaintiff] a fee equal to 6% of the gross sales price of the Property . . . . On 5 June 2006, Defendants entered into an "Agreement for Purchase and Sale of Real Property" [("purchase agreement")] with Legasus. In the purchase agreement Legasus agreed to pay $10,292,978.72 for the subject premises.

On 30 August 2007, Plaintiff filed suit against Defendants. In the Complaint, Plaintiff alleged that after Defendants and Legasus entered into the purchase agreement, Roger Lance Smith ("Smith") informed Defendants that he intended to exercise his right of first refusal in the subject premises. Smith's intention to exercise his right of first refusal constituted a breach of Defendants' agreement with Legasus. Plaintiff further argued that "[b]ecause [D]efendants breached the Agreement for Purchase and Sale of Real Property with Legasus of North Carolina, LLC, the fee agreed upon by . . . [the parties] in the [a]greement is now due and owing." Plaintiff sought $596,992.72 in damages.

On 14 July 2008, Defendants filed an answer generally denying the allegations that were raised in Plaintiff's complaint and raising several affirmative defenses. The jury trial began on 30 November 2009. During the trial, the trial court denied motions for a directed verdict made by both parties. Following the trial, the jury determined that Defendants breached the fee agreement that they had with Plaintiff, and that Plaintiff was entitled to $568,524.12 in damages. On

14 December 2009, Defendants filed a motion for a judgment notwith-standing the verdict and a new trial. The trial court denied Defendants' motions. On 23 April 2010, Defendants filed notice of appeal from the court's order. On 3 May 2010, Plaintiff filed notice of his intent to appeal from the trial court's decision to deny an earlier filed motion for summary judgment, and his motions for a directed verdict.

On appeal Defendants argue that: I) the trial court erred in denying Defendants' motions for a directed verdict, judgment notwithstanding the verdict, and a new trial; II) the trial court committed several errors in the instructions that it provided to jurors; III) the trial court erroneously admitted evidence that was "inadmissible, irrelevant, and prejudicial."

## Standard of Review

"The test for determining the sufficiency of the evidence when ruling on a motion for judgment notwithstanding the verdict is the same as that applied when ruling on a motion for directed verdict." *Northern Nat'l Life Ins. v. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). In each motion the trial court is tasked with determining "whether, upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." *Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000).

The trial court should deny either motion if there is more than a scintilla of evidence to support the *prima facie* case of the non-moving party. *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 644, 272 S.E.2d 357, 360 (1980); *Handex of the Carolinas, Inc. v. County of Haywood*, 168 N.C. App. 1, 9, 607 S.E.2d 25, 30 (2005). "On appeal, this Court . . . reviews an order ruling on a motion for directed verdict or judgment notwithstanding the verdict *de novo.*" *Austin v. Bald II, L.L.C.*, 189 N.C. App. 338, 342, 658 S.E.2d 1, 4 (2008).

I.

**[1]** Defendants first argue the trial court erroneously denied their motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial. Specifically, Defendants argue that Plaintiff failed to "produce a [b]uyer who met all conditions of the Purchase Agreement;" therefore, Plaintiff was not entitled to a commission from the sale of the subject premises. We agree with Defendants' contention.

"When a court is asked to interpret a contract its primary purpose is to ascertain the intention of the parties." *International Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989). If "the language of a contract is plain and unambiguous then construction of the agreement is a matter of law for the court." *Whirlpool Corp. v. Dailey Construction, Inc.*, 110 N.C. App. 468, 471, 429 S.E.2d 748, 751 (1993). However, "[w]hen an agreement is ambiguous and the intention of the parties is unclear, interpretation of the contract is for the jury." *International Paper*, 96 N.C. App. at 317, 385 S.E.2d at 556.

Typically, " 'when a broker, pursuant to an agreement with the owner of land, procures a purchaser for his principal's land ready, able and willing to buy the land upon the terms offered, he is entitled to commissions or compensation for his services.' " *Resort Realty of Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 117, 593 S.E.2d 404, 407 (2004) (quoting *Carver v. Britt*, 241 N.C. 538, 542, 85 S.E.2d 888, 891 (1955)). When the right of a broker to receive his condition is made dependent upon the occurrence of any other condition, this deviation from the normal rule must be clearly expressed in the contract. *Id.* at 118, 593 S.E.2d at 407 (citation omitted). "It is important in such situations that a distinction be made between language that imposes a condition which goes to the substance of a contract and language which relates only to its ultimate performance." *Id.*

Our Court has explained that a purchaser is "ready, willing, and able" when

the prospective purchaser desires to purchase, is willing to enter into an enforceable contract to purchase, and has the financial and legal capacity to purchase within the time required on the terms specified by the seller. Further, the purchaser indicates readiness and willingness by executing a valid offer to purchase that either complies with the seller's requirements as set forth in the listing contract or is accepted by the seller.

*Id.* (internal quotation marks and citations omitted). In most contracts, the interpretation of an unambiguous term between a real estate broker and a seller is controlled by the express language of the agreement. *See Nash v. Yount*, 35 N.C. App. 661, 663, 242 S.E.2d 398, 399 (1978).

In the case at bar, Plaintiff signed a fee agreement with Defendants on 1 May 2006. In pertinent part, the agreement provided that Plaintiff shall receive payment when Defendants "[accept] an

unconditional offer from [Legasus] or when all conditions have been met following the [Defendants'] acceptance of a conditional offer from [Legasus.]" The terms of the fee agreement also provided that

> [i]n the event of any breach by [Defendants], . . . of any contract of purchase and sale, it is understood and agreed that the fee remains earned and payable upon notice given by [Defendants] to [Legasus] of [Defendants'] intent not to proceed with such a sale, notwithstanding the basis of such intent not to proceed.

Plaintiff in this case failed to produce a buyer that satisfied all conditions of a conditional offer.

"Generally, the obligations of a buyer and a seller under a real estate purchase agreement 'are deemed concurrent conditions-meaning, that neither party is in breach of the contract until the other party tenders his/her performance, even if the date designated for the closing is passed.' " *Ball v. Maynard*, 184 N.C. App. 99, 102, 645 S.E.2d 890, 893 (2007) (quoting *Disher Developers, Inc. v. Brown*, 145 N.C. App. 375, 378, 549 S.E.2d 904, 906, *aff'd per curiam*, 354 N.C. 569, 557 S.E.2d 528 (2001)). However, where a condition precedent needs to be performed by a particular date, other than the date of closing, a separate date should be included in the contract to govern the condition. *Fletcher v. Jones*, 314 N.C. 389, 393 n.1, 333 S.E.2d 731, 734 n.1 (1985). Additionally, a separate time is of the essence clause should be included if necessary. *Id.* "It would then . . . [be] clear that this particular condition, separate from the act of closing, must be strictly performed by a different date." *Id.*

In the current action, the purchase agreement signed by Defendants required that Legasus complete a title examination of the subject premises within 60 days of the date of contract. If the search of title revealed that Defendants title was not "fee simple marketable and insurable, subject only to Permitted Exceptions," Legasus was to provide Defendants with written notice of the title defects. Thereafter, Defendants would have a 30 day period in which to cure the defects. If the defects were not cured in 30 days, Legasus was entitled to terminate the agreement. The examination period of this agreement also included a "time is of the essence clause."

Defendants entered into the purchase agreement with Legasus on 5 June 2006. On 29 May 2007, Legasus informed Defendants that "title examination [of the subject premises] revealed the retention by Roger Lance Smith of a right of first refusal in the subject property" and that Roger Smith intended on exercising the right of first refusal.

JIM LORENZ, INC. v. O'HAIRE

[212 N.C. App. 648 (2011)]

By letter dated, 21 June 2007, Defendants informed Legasus that the time period to provide notification of title defects had passed. Legasus failed to provide notice of a title defect within the time period contemplated by the contract. Because Legasus failed to notify Defendants of the Smith right of first refusal within the applicable time period of the purchase agreement, Plaintiff was not entitled to payment within the terms of his fee agreement.

On appeal, Defendant does not tend to argue that Legasus provided notice of the right of first refusal within the examination period. Instead, Plaintiff contends that because Defendants had notice of the Smith right of first refusal, it was not a marketable title defect as contemplated by the contract. The Smith right of first refusal was within the chain of title for the subject premises. However, the plain and unambiguous language of the title examination condition fails to distinguish between defects that are within Defendants' chain of title and those that are not. Moreover, the terms of the purchase agreement expressly excluded another right of first of refusal of which Defendants were aware. If Defendants had intended to include the Smith right of first of refusal as an exception to the title examination clause, they could have done so expressly.

[2] Plaintiff also contends that because Defendants breached the terms of the purchase agreement, he was still entitled to his commission under the fee agreement. In support of this argument, Plaintiff cites the following provision of the fee agreement entered into by the parties: "In the event of any breach by [Defendants] . . . of any contract of purchase and sale, it is understood and agreed that the fee remains earned and payable upon notice given by [Defendants] to [Legasus] of [Defendants'] intent not to proceed with such sale."

Our Court has held that "[a] condition precedent is a fact or event, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Cox v. Funk*, 42 N.C. App. 32, 34, 255 S.E.2d 600, 601 (1979) (internal quotation marks omitted). Here, Legasus was required to timely provide Defendants with notice of the Smith right of first refusal before it could demand performance by Defendant under the terms of the contract. Because Defendants were not responsible for a breach of the terms of the purchase agreement, Plaintiff was not entitled to a commission under the terms of the fee agreement.

**[3]** Plaintiff cross-assigns error from the trial court's decision to deny his motion for summary judgment. "Generally orders denying motions for summary judgment are not appealable." *Hill v. Smith*, 38 N.C. App. 625, 626, 248 S.E.2d 455, 456 (1978). "Ordinarily the denial of a motion for summary judgment does not affect a substantial right so that an appeal may be taken. The moving party is free to preserve his exception for consideration on appeal from the final judgment. . . ." *Motyka v. Nappier*, 9 N.C. App. 579, 582, 176 S.E.2d 858, 859 (1970). Because Plaintiff does not have the right to appeal the trial court's denial of his motion, this argument is dismissed. *Id.* Plaintiff also cross-assigns error from the trial court's denial of his motions for directed verdict. As previously addressed above, the trial court's denial of Plaintiff's motions for directed verdict was not erroneous.

Reversed.

Judges CALABRIA and STEELMAN concur.