ISABELLE J. DIXON, AND HER SUCCESORS IN INTEREST, WALTER CRANE AND SANDRA ISABELLE HARDEE, AS CO-EXECUTORS OF THE ESTATE OF ISABELLE J. DIXON, AND SANDRA ISABELLE HARDEE, INDIVIDUALLY AND HUSBAND AUGUST M. HARDEE, GEORGE PATRICK DIXON AND WIFE, MRS. GEORGE PATRICK (BARBARA M.) DIXON, AND MICHAEL DENNIS DIXON AND WIFE, DIANNE S. DIXON, DEVISEES UNDER THE WILL OF ISABELLE J. DIXON PLAINTIFFS v. C. WAYNE KINSER, DEFENDANT

---

C. WAYNE KINSER, PLAINTIFF v. ISABELLE J. DIXON (MRS. GEORGE M. DIXON), AND HER SUCCESSORS IN INTEREST, WALTER CRANE AND SANDRA ISABELLE HARDEE, AS CO-EXECUTORS OF THE ESTATE OF ISABELLE J. DIXON, AND SANDRA ISABELLE HARDEE, INDIVIDUALLY, AND HUSBAND, AUGUST M. HARDEE, GEORGE PATRICK DIXON AND WIFE, MRS. GEORGE PATRICK (BARBARA M.) DIXON, AND MICHAEL DENNIS DIXON AND WIFE, DIANNE S. DIXON, DEVISEES UNDER THE WILL OF ISABELLE J. DIXON, DEFENDANTS

No. 8128SC117

(Filed 6 October 1981)

1. **Vendor and Purchaser § 1— construction of contract to convey—offer and acceptance**

   A letter from defendant which set out in detail the conditions of a purchase and lease of property was an offer even though it used the terms "proposes to purchase," and a letter stating "I accept your proposal as outlined above" was an acceptance and the further wording "I give you the right and option for 120 days from this date to execute the agreement" was not an option but merely a deferral of the time for execution of the agreement.

2. **Contracts § 21.3— anticipatory breach of contract to convey—excuses performance of purchaser**

   A statement by vendor's attorney that vendor did not wish to proceed with an agreement to convey land and would not do so supported a finding of

Dixon v. Kinser and Kinser v. Dixon

anticipatory breach on the part of vendor and such breach excused any failure to comply with the terms of the contract on the part of the purchaser.

APPEAL by plaintiffs Dixon, et al. from *Thornburg, Judge.* Order entered 5 September 1980, BUNCOMBE County Superior Court. Heard in the Court of Appeals 2 September 1981.

Plaintiffs, Isabelle J. Dixon, et al., (Dixon) appeal from a judgment in 76CVS943 construing a paper writing as a contract to sell and lease certain real property known as Zealandia and awarding the defendant, C. Wayne Kinser (Kinser) specific performance of the contract and money damages.[1] The paper writing[2] was executed by Dixon and Kinser on 6 October 1975 and produced two lawsuits — one, instituted by Dixon on 4 May 1976 to remove a cloud on her title to Zealandia, alleging the paper writing to be an option to purchase; and the other instituted by Kinser on 11 May 1976 seeking specific performance, alleging the paper writing to be a contract for the purchase, sale and lease of Zealandia.

The two lawsuits were consolidated for trial and tried before Judge Lacy H. Thornburg, sitting without a jury, during the week of 18 February 1980. On 6 March 1980, Judge Thornburg rendered a decision in favor of Kinser and against Dixon in both cases and advised all counsel of his decision. On 13 March 1980, a written judgment was prepared and signed. At the time the judgment was signed, however, neither counsel nor the court was aware that Dixon had died on 7 March 1980.[3] As a result of Dixon's death, the Co-Executors and beneficiaries under her will were substituted as parties, and judgment was again entered on 5 September 1980.

.

1. Kinser cross-appealed in 76CVS1003, but we summarily reject his assignments of error in part IV, *infra.*

2. The paper writing consists of a two-page one-sentence letter prepared by Kinser and an attached one-paragraph letter prepared by William C. Moore, an attorney for Dixon.

3. Dixon did not attend the trial, but her deposition testimony was read into evidence.

*Morris, Golding, Blue & Phillips, by William C. Morris, Jr. for Isabelle J. Dixon, et al.*

*Westall & Baley, by J. M. Baley, Jr., for C. Wayne Kinser.*

BECTON, Judge.

This appeal presents three questions of law: (1) Is the 6 October 1975 paper writing a contract or an option? (2) If it is an option, did Kinser fully comply with the terms of the 6 October 1975 paper writing? (3) If Kinser did not fully comply with the terms of the 6 October 1975 paper writing, was his non-compliance excused by the anticipatory breach of contract by Dixon?

The scope of appellate review in a case heard by a judge sitting without a jury is clear. The trial court's findings of fact have the force and effect of a verdict by jury and are conclusive on appeal if there is evidence to support them, even though evidence might sustain findings to the contrary. *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *Knutton v. Cofield*, 273 N.C. 355, 160 S.E. 2d 29 (1968).

I.

[1]  With the scope of review in mind, we turn to Dixon's first assignment of error, that the trial court "erred in adjudicating the October 6, 1975 [paper writing] to be a bilateral contract for sale and lease instead of a unilateral option." This assignment of error is based on Dixon's alternative arguments: (1) that the paper writing is an option (and Kinser admits as much in his Answer to Dixon's Complaint); and (2) that the paper writing is a "masterpiece of ambiguity" that, at most, sets forth a proposal "as distinguished from a firm offer." Dixon, therefore, contends that the paper writing should be strictly construed against Kinser, its maker.

The paper writing is set forth in its entirety on the following page:

P. O. Box 6266
Asheville, N. C. 28806
October 6, 1975

Mrs. George M. Dixon
377 Country Club Road
Asheville, N. C.

Dear Mrs. Dixon:

This letter is to set forth the current understanding relative to my (Wayne Kinser) development of the "Zealandia" property.

This property consists basically of two separable tracts, the stable property lying on the easterly side of Vance Gap Road (being designated as Ward 8, Sheet 25, Lot 50 1/4) and the larger house property lying on the westerly side of Vance Gap Road (being designated as Ward 8, Sheet 19, Lot 1).

Mr. Kinser proposes to purchase the stable property for a purchase price of $20,000.00, payable in cash of up to 29%, with the balance of the purchase price payable in two annual installments after the closing and bearing interest on the unpaid balance at 8 1/4 per annum. Mr. Kinser proposes to develop this property as a dinner theater.

Mr. Kinser further proposes a lease of the house property for a term of 20 years commencing on January 1, 1976. Mr. Kinser proposes to develop the existing house into a specialty shopping center, consisting of small shops, the development of necessary parking facilities to be used in common with the dinner theater, possible additional retail facilities and, depending on financial feasibility, the eventual construction of apartments on presently undeveloped portions of the property.

The proposed lease would require Mr. Kinser to maintain the property and pay casualty insurance and property taxes on the property during the entire lease term. There will be no rental payments due for the first three years of the lease term. Thereafter for the remaining seventeen years of the lease term, the annual rental would be an amount equal to 50% of the net income after depreciation from the property or $18,975.00 whichever is greater.

The Lessee would have the right to make improvements upon the property in furtherance of the development plans outlined above. It is agreed that the lease may be assigned as security for such institutional financing as may be required to accomplish the proposed development.

By separate letter agreement, Mr. Kinser would agree to indemnify Mrs. Dixon and hold her harmless from any obligation to Previews Incorporated as the result of entering into this agreement. Mr. Kinser shall at any time during the term of the lease have the right and option to purchase the house property for $230,000.00, which sum would be payable over a 20 year period and bear interest at an annual rate which is one-percent less than the prime rate as then established by the Wachovia Bank and Trust Company at their Winston-Salem, N. C. office.

> Very truly yours,
> s/WAYNE KINSER
> Wayne Kinser

Dear Mr. Kinser:

I accept your proposal as outlined above and for the sum of ten dollars, receipt of which is hereby acknowledged, I give you the right and option for 120 days from this date to execute the agreements.

> Isabelle J. Dixon
> (Mrs. George M. Dixon)

> Date: s/Isabelle J. Dixon
> (Mrs. George)

The applicable law can be simply stated as follows:

(1) An option agreement binds the vendor to sell and convey, but does not bind the vendee to purchase. A contract, on the other hand, binds both parties, the vendor to sell and convey and the vendee to purchase. *Douglass v. Brooks*, 242 N.C. 178, 87 S.E. 2d 258 (1955).

(2) The holder of the option is not bound in any way to exercise his rights thereunder and may abandon the option without any liability, losing only what he paid for

the option. *Id.*; *Winders v. Kennan,* 161 N.C. 628, 77 S.E. 687 (1913).

(3) When the holder of the option exercises the option and accepts in full compliance with the terms of the option agreement, a bilateral contract for sale is created. Such a contract for sale may then be enforced through specific performance and money damages by both the buyer and the seller. *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976); *Douglas v. Brooks.*

(4) Absent special circumstances, time is of the essence in an option to purchase land but is not of the essence in a contract of sale or purchase. *Douglass v. Brooks; Catawba Athletics v. Newton Car Wash,* 53 N.C. App. 708, 281 S.E. 2d 676 (1981).

In construing the paper writing to determine whether it contains an option or contract to sell, we determine the intentions of the parties from the accepted meaning of the language used in the paper writing. Our examination of the paper writing compels a conclusion that a contract for sale and lease was formed. Kinser in his letter, although using the word "proposed," offered to "purchase the stable property for a purchase price of $20,000.00, payable in cash of up to 29% with the balance of the purchase price payable in two annual installments after the closing and bearing interest on the unpaid balance at 8 1/4% per annum." Kinser also offered to "lease the house property for a term of 20 years commencing on January 1, 1976," and then spelled out in detail the terms of the lease agreement. This detailed offer was then signed by Kinser. Attached to this signed offer is a letter to which Dixon affixed her signature. That letter states, "I accept your proposal as outlined above . . . ." Thus, we have an offer by Kinser and an acceptance by Dixon. Such offer and acceptance, occurring in the same instrument, constitutes a full and complete contract, fully binding on both parties. Dixon's acceptance went on to say, "I give you the right and option for 120 days from this date to execute the agreement." This was not an option but merely a deferral of the time for execution of the agreement. Thus by the terms of the contract, Kinser had 120 days within which he could execute the necessary documents. (We note parenthetically that generally the prospective seller is the one who makes the of-

fer or signs the option agreement. Frequently, the prospective purchaser does not even sign the option agreement and there is no necessity for him to do so since he is not bound at that point in time. Here, Kinser, the prospective purchaser, made the offer to purchase and his offer cannot be construed as an option.)

We uphold the trial court because its determination that the paper writing is a contract rather than an option is fully supported by findings of fact and conclusions of law.

## II

Dixon also argues that the trial court erred in its alternative holdings that (1) even if the paper writing is an option, Kinser executed the paper writing in accord with its terms and (2) even if Kinser did not execute the paper writing in accord with its terms, Kinser was not obligated to comply with its terms because Dixon was guilty of an anticipatory breach. The trial court was correct, and thus we have two additional bases for according Kinser relief.

## 1.

Dixon contends that the paper writing required Kinser to do several things, including either the preparation, execution or delivery of a deed, promissory note, deed of trust, fire and casualty insurance policy, settlement statement and $5,800.00 cash for the sale of the stable property and comparable documents on the lease of the house property. As we read the paper writing, Kinser was simply required to execute the following within 120 days from the date the agreement was signed:

(1) Note for balance of purchase price of stable property;

(2) Deed of trust securing that note;

(3) Lease of the house property setting forth terms and conditions required by the paper writing; and

(4) Indemnification agreement holding Dixon harmless from any obligations to Previews, Inc.

No other documents needing Kinser's signature were specified or required. The paper writing did not address the questions of delivery or tender of any documents nor the tender of any purchase price. Kinser executed all required documents and suffi-

ciently notified Dixon that he had executed the required documents. In addition to delivering the executed documents to Dixon's attorney who returned the documents to Kinser, Kinser also notified Dixon by telegram at her residence in Florida and her residence in Asheville, North Carolina, that he had executed the required documents. Moreover, Kinser delivered to his attorney to be placed in a trust account, the only cash involved in the transaction, the sum of $5,800.00 as down payment for the purchase of the stable property. Thus, Kinser executed the paper writing in accord with its terms.

2.

[2] The doctrine of anticipatory breach is well known: when a party to a contract gives notice that he will not honor the contract, the other party to the contract is no longer required to make a tender or otherwise perform under the contract because of the anticipatory breach of the first party. *See Burkhead v. Farlow*, 266 N.C. 595, 146 S.E. 2d 802 (1966); *Oil Co. v. Furlonge*, 257 N.C. 388, 126 S.E. 2d 167 (1962); *Douglass v. Brooks*, Consequently, we look to the trial court's findings of fact and conclusions of law to see if they are supported by competent evidence. The court found as a fact that William C. Moore was an attorney and agent for Dixon and that William C. Moore stated that Dixon did not wish to proceed with the agreement of October 6, 1975 and would not do so. Both Kinser and Attorney William C. Moore testified concerning Attorney Moore's involvement and representation of Dixon. On the basis of their testimony, the trial court made the following findings of fact, among others:

> 5. That [Kinser], . . . prior to October 6, 1975, met with [Dixon] and William C. Moore, an attorney . . . at the law office of Mr. Moore . . . to discuss the purchase and lease proposal. . . . That at said meeting William C. Moore acted for and advised with [Dixon], representing her as her attorney, and suggested on her behalf a number of changes in the proposal . . . among which were a change in the interest rate on the stable-purchase transaction from an annual rate of 6% to 8 1/4%, a reduction in the term of the lease from 35 to 20 years, an agreement that for three years of the lease term there would be no lease payments, and the agreement upon an interest rate of 1% less than the prime rate established at

the Winston-Salem office of Wachovia Bank and Trust Company in the event the option to buy was exercised; that at no time during the course of this conference did [Dixon] or Mr. Moore advise defendant Kinser that Mr. Moore did not fully represent [Dixon] in the aforesaid negotiations.

6. Subsequent to said meeting, . . . [Kinser] revised his proposal . . . . [Kinser] then met with William C. Moore in Moore's office to review such revised proposal and, at such meeting, William C. Moore, acting on behalf of [Dixon] caused a Memorandum Addendum to such written proposal to be prepared in his office; that at no time during the review of the revised proposal and the preparation of the Memorandum Addendum did William C. Moore advise [Kinser] that he did not fully represent [Dixon] in such negotiations.

. . .

8. Thereafter, in early November, 1975, [Kinser] made arrangements to permit the property owned by [Dixon] . . . to be used for the purpose of holding an art auction; when such arrangements became public, William C. Moore, attorney, called [Kinser] on behalf of [Dixon] to express some concern of [Dixon] about holding the auction; that [Kinser] thereupon called [Dixon] and [Dixon] indicated that she had instructed Mr. Moore to call [Kinser] because she was disturbed about the use of the property without her express permission . . . .

. . .

10. That, on November 24, 1975, William C. Moore, acting on behalf of [Dixon], met with [Kinser] . . . in the office of Mr. Wood. At this meeting, William C. Moore stated that *[Dixon] did not wish to proceed with the agreement of October 6, 1975, and would not do so. . . .*

. . .

15. That at no time prior to February 3, 1976, did [Dixon or William C. Moore] communicate to [Kinser] or to anyone acting on behalf of [Kinser] any statement concerning any limitation of authority for William C. Moore to act on behalf of [Dixon].

. . .

17. That [Dixon] sought advice and counsel from William C. Moore and Authorized William C. Moore to meet with [Kinser] and [Kinser's] attorneys and to negotiate with them on her behalf in discussions leading to the October 6, 1975, Agreement and in discussions subsequent to October 6, 1975, concerning the October 6, 1975 agreement.

We find the findings of fact to be supported by competent evidence and we further find that the Court's conclusions of law are supported by the findings of fact. So, even if, *arguendo*, the 6 October 1975 paper writing is construed as an option, and even if Kinser did not comply fully with all terms and provisions of that option, Kinser's failure to comply is excused because of Dixon's anticipatory breach. Dixon, through her attorney, said on 24 November 1975 that she would not go through with the agreement.

### III

We have examined Dixon's two remaining assignments of error: (1) that the court erred in failing to determine that the paper writing was too vague and uncertain to be specifically enforced; and (2) that the trial court erred in failing to set aside the judgment. Simply stated, we find no error.

### IV

Similarly, we reject Kinser's two assignments of error in his cross appeal, that the trial court erred in denying his motion for summary judgment and further erred in allowing recovery of only nominal damages for injuries and deterioration to the house property by reason of the neglect and delay in performance of Dixon's obligations.

Consequently, the judgment of the trial court is

Affirmed.

Judge MARTIN (Robert M.) and Judge MARTIN (Harry C.) concur.