DISHNER DEVELOPERS, INC., Plaintiff v. VICTORIA BROWN, Defendant

No. COA00-904

(Filed 7 August 2001)

**Vendor and Purchaser— purchase of realty—breach of contract—earnest money**

The trial court did not err by finding defendant was in breach of contract to purchase certain realty from plaintiff and by allowing plaintiff to retain $6,500 in earnest money when defendant declared the contract null and void just a week after the failed closing, because: (1) the purchase agreement did not provide a time is of the essence clause, thus allowing plaintiff a reasonable time to perform; (2) the contract provided a thirty-day period, after written notice, in which the seller could cure any title defect; (3) plaintiff received oral notice of defendant's unwillingness to close based on a title defect at closing, but did not receive written notice; (4) defendant failed to give plaintiff the thirty days provided under the contract, or a reasonable time, to cure the defect; and (5) a defaulting buyer may not recover any portion of consideration paid prior to his breach.

Judge TYSON dissenting.

Appeal by defendant from order entered 23 March 2000 by Judge Lee Gavin in District Court, Moore County. Heard in the Court of Appeals 23 July 2001.

*Lapping & Lapping, by Sherwood F. Lapping, for plaintiff-appellee.*

*Gill & Tobias, L.L.P., by Douglas R. Gill, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Victoria Brown ("defendant") appeals from the order finding her in breach of contract and allowing Dishner Developers, Inc. ("plaintiff") to retain $6,500 in earnest money. The facts in this case are uncontroverted. Defendant entered into a contract to purchase certain realty from plaintiff on 25 June 1997. The contract included a thirty-day cure provision after written notice of any title defect. The contract also provided that buyer's breach would result in the forfeiture of all earnest money to the seller. The agreement further provided that closing would "occur on or before August 1[,] 1997."

Closing was subsequently held on 28 July 1997. At closing, defendant learned that there were three outstanding deeds of trust encumbering the property. One of the deeds of trust had been paid in full, but not recorded as such. In addition, plaintiff received oral agreements to release the two others. Defendant was unwilling to close under those circumstances. Defendant returned to her home state, Florida, but left, with her attorney in Moore County, documents and funds necessary to complete the transaction at a later date. Thereafter, plaintiff's attorney informed defendant's closing attorney that the deeds of trust would be canceled and that plaintiff was ready to proceed. When the Moore County attorney related this information to defendant's realtor, the realtor informed counsel that defendant wanted to void the contract and requested the return of all earnest money paid. Upon learning of defendant's position, plaintiff's attorney took no further actions to prepare releases since no closing was scheduled. The three deeds of trust were ultimately released in January 1998 and April 1999.

Plaintiff filed suit to retain the earnest money paid by defendant, alleging that as the breaching party to the contract, defendant was not entitled to recover any earnest money. This matter was heard during a non-jury trial, whereupon the court found and concluded that defendant had breached the 25 June 1997 contract and forfeited all earnest money paid. The trial court made some thirteen findings of fact. Pertinently, the court found:

6. At closing it was noted that there were three deeds of trust outstanding, which included as security, the property to be demised.

7. Plaintiff immediately took steps to obtain releases on the subject property and on Monday, August 11th, 1997, notified Defendant[']s attorney . . . that Plaintiff was ready and able to deliver title to Defendant free and clear of any encumbrances.

8. Defendant on or about August 4, 1997, notified her real estate agent that she declared the contract "null and void", ordered the agent to "halt the deal completely" and requested the return of her down payment. The agent passed this information to Defendant's attorney, who informed Plaintiff's attorney.

9. As a result, Plaintiff's attorney took no further actions to prepare releases since no closing was scheduled.

10. At no time did Defendant seek to arrange a subsequent closing.

11. Defendant at no time made written objection to Plaintiff regarding defects in the title to subject property proffered Defendant by Plaintiff, as required by [section 6(c)] of the real estate contract.

. . . .

13. Agreement provision Nine provides that in the event of breach by buyer, earnest money shall be forfeited and paid to seller.

The trial court made five conclusions of law, but defendant only takes issue with the following:

2. Defendant unilaterally breached the real estate contract by declaring it to be null and void and ordering her attorney through her real estate agent to halt the deal.

3. Defendant failed to comply with the provisions of the contract which required written notice to the seller of all title defects and exceptions and to allow thirty days for the seller to cure said noticed defects.

. . . .

5. The actions of the defendant in this breach dictate the forfeiture of $6,500 as the specified earnest money to be paid to Plaintiff.

Defendant appeals.

_____

We must first determine whether the findings of fact challenged by defendant are supported by the evidence. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). With the exception of finding number eight, defendant fails to argue in her brief that the trial court's factual findings are not supported by the evidence. Defendant further fails to list any assignments of error concerning the trial court's findings in her brief.[1] It follows that assignments of error relating to the trial court's factual findings are deemed abandoned, *see* N.C.R. App. P.

_____

1. In fact, defendant fails to list any of the pertinent assignments of error after her arguments in violation of North Carolina Rule of Appellate Procedure 28(b)(5). While, as plaintiff contends, such failure subjects this appeal to dismissal, pursuant to North Carolina Rule of Appellate Procedure 2, the Court will entertain the merits of defendant's arguments.

28(b)(5), and those findings are accordingly conclusive on appeal. *See In re Appeal of CAMA Permit*, 82 N.C. App. 32, 40, 345 S.E.2d 699, 704 (1986). We note that even if defendant's reference to finding number eight properly preserves it for appellate review, we find that it is supported by competent evidence, and it is, therefore, also binding on appeal. Our inquiry is, then, whether the trial court's findings support its conclusions of law and, in turn, whether those conclusions are legally proper. *See id.*

In general, a buyer's obligation to pay the purchase price for a piece of realty and the seller's obligation to convey title to that realty are deemed concurrent conditions—meaning, that neither party is in breach of the contract until the other party tenders his/her performance, even if the date designated for the closing is passed. *Fletcher v. Jones*, 314 N.C. 389, 395, 333 S.E.2d 731, 735-36 (1985). It is well settled that absent a time-is-of-the-essence clause, North Carolina law "generally allows the parties [to a realty purchase agreement] a reasonable time after the date set for closing to complete performance." *Id.* at 393, 333 S.E.2d at 734 (citing *Scarborough v. Adams*, 264 N.C. 631, 142 S.E.2d 608 (1965)). In *Fletcher*, our Supreme Court quoted, "when time is not of the essence, the date selected for closing can be viewed as 'an approximation of what the parties regard as a reasonable time under the circumstance of the sale.' " *Id.* at 393-94, 333 S.E.2d at 735 (quoting *Drazin v. American Oil Company*, 395 A.2d 32, 34 (D.C. Ct. App. 1978)). Significantly, the parties may waive or excuse non-occurrence of or delay in the performance of a contractual duty. *See id.* at 394-95, 333 S.E.2d at 735-36.

Here, the purchase agreement did not provide a time-is-of-the-essence clause. Accordingly, under existing case law, plaintiff is allowed a reasonable time to perform. More significantly, the contract provided a thirty-day period, after written notice, in which the seller could cure any title defect. Plaintiff received oral notice of defendant's unwillingness to close because of the title defect at closing. Defendant did not provide written notice of the defect. Further, she failed to give plaintiff the thirty days provided under the contract, or "reasonable time" provided by existing case law, to cure the defect. Therefore, when defendant declared the contract null and void on 4 August 1997—just a week after the failed closing—she breached the contract. Furthermore, we note, that upon defendant's breach, plaintiff was relieved of its duty to perform. *See Mizell v. Greensboro Jaycees*, 105 N.C. App. 284, 289, 412 S.E.2d 904, 908 (1992) (stating that "[p]laintiff's offer to perform does not have to be shown where

**DISHNER DEVELOPERS, INC. v. BROWN**

[145 N.C. App. 375 (2001)]

defendant [has] refused to honor or repudiates the contract[]"). Because of defendant's breach, in accordance with Section 9 of the purchase agreement, she forfeited the $6,500 earnest money paid to plaintiff. *See also Star Fin. Corp. v. Howard Nance Co.*, 131 N.C. App. 674, 676, 508 S.E.2d 534, 535 (1998) (noting that "North Carolina follows the common law rule, which is the majority American view, that a defaulting buyer may not recover any portion of consideration paid prior to his breach[]"), *aff'd per curiam*, 350 N.C. 589, 516 S.E.2d 381 (1999).

We, then, conclude that the trial court's conclusions are supported by its findings and that those conclusions are legally proper. Accordingly, the order of the trial court is affirmed.

Affirmed.

Judge GREENE concurs.

Judge TYSON dissents with separate opinion.

TYSON, Judge, dissenting.

I respectfully dissent from the majority opinion that affirms the trial court's judgment for plaintiff.

I would hold that plaintiff's prior breach of the contract excused defendant's performance. Alternatively, I would hold that the trial court's conclusions of law that defendant unilaterally breached the contract are not supported by its findings of fact that defendant's conduct was an unequivocal repudiation of the contract. I would hold that defendant is entitled to a refund of her earnest money.

## I. NOTICE

In addition to the facts set out in the majority's opinion, I add the following: Plaintiff's attorney was given notice by defendant's attorney of three outstanding deeds of trust recorded against the property, on or about 18 July 1997, ten days prior to the scheduled closing date. Defendant's attorney, Randolph E. Shelton, Jr., Esq., was called at trial *as a witness for plaintiff*. Shelton testified that he gave plaintiff's attorney oral notice of three outstanding deeds of trust against the property as is the custom and practice of the area. Shelton testified that in over 20 years of real property practice, he could not recall

giving or receiving written notice. Shelton explained the custom by stating,

> [w]e see each other all the time. The real estate lawyers see each other all the time in the court house, and the register of deeds office. Between personal contact and telephone, that's the way we handle those. If it were something other than a mortgage . . . Perhaps we would make the discussions more formally in writing. But we're just talking about dealing with the deeds of trust, that's just routine.

Shelton also testified that he did not consider the deeds of trusts to be "defects in title." Plaintiff testified that he was aware of the three deeds of trust long before the closing date of 28 July 1997, and took no steps to get them canceled as of the closing date or any reasonable time thereafter. Plaintiff further testified that the deeds of trust were not canceled or released until January 1998 and April 1999.

Plaintiff knew of the outstanding deeds of trust long before closing and knew it could not transfer title for the property to defendant as required by the contract until the deeds of trust were canceled or released. Plaintiff's attorney was told about the deeds of trust ten days prior to the scheduled closing. Plaintiff never demanded written notice of the outstanding deeds of trust.

During testimony, one of plaintiff's principles, Jess Dishner, was asked the question, "did you ever provide notice to Mrs. Brown saying, 'I have now cleared the title and . . . I will close this sale on a certain date?'" Dishner answered "no." I would hold that plaintiff received any required notice of "defects in title" and took no steps to perform its obligations at closing, or a reasonable time thereafter.

## II. NON-PERFORMANCE BY PLAINTIFF

The contract called for closing date on or before 1 August 1997. The closing date was set for 28 July 1997, by mutual agreement of the parties. Defendant drove sixteen hours from Florida to attend the closing. All parties were present at the closing. None of the three deeds of trust had been canceled or released as of the closing date. At closing, contrary to the contract, plaintiff offered defendant a "wrap around mortgage" which was rejected by defendant and her attorney. Notwithstanding these events, defendant signed all required closing documents and left the documents and the remaining funds with her attorney with instructions to complete closing, if plaintiff delivered title in conformity with the contract.

Under section 5 of the contract, plaintiff contracted "to convey fee simple marketable title to the Property by general warranty deed, subject only to the exceptions hereinafter described free and clear of all encumbrances." Plaintiff's failure to deliver the title in accordance with Section 5 of the contract on the closing date, or a reasonable time thereafter, constituted a prior breach, excusing defendant's performance, and allowing defendant to terminate the contract.

Plaintiff argues that performance by one party to a contract is excused, if the other party has repudiated the contract, making a tender of performance by the non-breaching party a futility. *Dixon v. Kinser*, 54 N.C. App. 94, 101, 282 S.E. 2d 529, 534 (1981).

North Carolina recognizes that defendant breaches the contract if she repudiated her obligation under the contract before her performance was immediately due. In order to establish such repudiation and to excuse their own non-performance, plaintiff has the burden of showing by the greater weight of the evidence, that defendant engaged in positive and unequivocal acts and conduct which were clearly inconsistent with the contract. *Bell v. Brown*, 227 N.C. 319, 322, 42 S.E.2d 92, 94 (1947). Since the only evidence communicated to plaintiff was defendant's broker's mid-August note to plaintiff's broker indicating defendant's desire to void the contract, and requesting the refund of the deposit, there is no positive and unequivocal indication that defendant would not perform the contract. The fully executed documents and funds were still being held by defendant's attorney, awaiting plaintiff's performance. Defendant could do nothing more to complete the closing, other than what she had already done.

This Court has held that "in order to constitute anticipatory repudiation, the words or conduct evidencing an intention to breach the contract must be a 'positive, distinct, unequivocal, and absolute refusal' to perform the contract when the time fixed for performance arrives." *Gordon v. Howard*, 94 N.C. App. 149, 152, 379 S.E.2d 674, 676 (1989) (quoting *Nesser v. Laurel Hill Assocs.*, 93 N.C. App. 439, 443, 378 S.E.2d 220, 223 (1989)).

In *Gordon*, after entering into a contract for the purchase of a house, the buyers wrote directly to the seller that "[m]y purpose in writing is to tell you that my wife and I have decided not to purchase lot number 22 in Glenn Kerry . . . therefore, kindly return my $10,000 deposit." *Id.* at 150, 379 S.E.2d at 675. This Court held that the letter was only an offer to withdraw from the contract conditional upon a

return of the earnest money and not unequivocal repudiation of the contract. *Id.* at 152, 379 S.E.2d at 676.

The only finding of fact that bears on the issue of repudiation is that defendant "on or about 4 August 1997, notified *her* real estate agent that she declared the contract null and void, ordered the agent to halt the deal completely and requested the return of her down payment." The trial court further found "[t]he agent passed this information to *defendant's* attorney." (Emphasis supplied). This telephone message to defendant's real estate agent and subsequently to her attorney was not unequivocal notice of repudiation to the plaintiff nor was the letter dated 14 August 1997 from defendant's agent to plaintiff's agent an unequivocal repudiation of the contract. I cannot distinguish the facts in this case from those in *Gordon. Id.*

Assuming defendant did repudiate the contract, the repudiation itself does not *ipso facto* constitute a breach. It is not a breach of the contract unless it is treated as such by the adverse party. *Gordon* at 153, 379 S.E.2d at 676. After receipt of the 14 August 1997 letter by its agent, plaintiff continued to demand performance by defendant. However, plaintiff never tendered its performance required by the contract, namely: to present and convey title in fee, free and clear of all encumbrances to defendant as of date of closing, or a reasonable period of time thereafter.

Plaintiff's failure to perform by delivering title free from encumbrances at or within a reasonable period of time after scheduled closing and never tendering the title required by the contract excused defendant's performance under the contract. Due to plaintiff's prior breach of the contract, defendant was justified in terminating the contract and is due return of the earnest money deposit. I would reverse the decision of the trial court.