EUGENE S. BALL, PEGGY M. BALL, PATRICIA G. MILLER AND KENNETH C. MILLER, SR., PLAINTIFFS-APPELLEES v. ROBERT E. MAYNARD, JR., DEFENDANT-APPELLANT

No. COA06-1545

(Filed 19 June 2007)

**1. Vendor and Purchaser— real estate sale—time of perform-
ance changed—waiver**

There was no error where the trial court concluded that the parties had modified a real estate sales contract to extend the time for performance. Defendant waived the original closing date by agreeing to obtain and provide plaintiffs with a valid septic permit and the court was not required to make findings regarding the Statute of Frauds or consideration.

**2. Vendor and Purchaser— real estate sale—invalid septic
permit—ready, willing and able to perform**

The evidence supported a finding that plaintiffs were ready, willing, and able to close on a real property purchase where it was discovered that the existing septic permit was invalid after the parties entered the contract. Neither plaintiffs' readiness, willingness, nor ability to perform were negated by plaintiffs' insistence that defendant comply with the terms of the original contract.

**3. Vendor and Purchaser— real estate sale—duty to per-
form—breach by other party**

Plaintiffs were relieved of their duty to perform a real estate purchase contract where defendant was obligated to provide a valid septic permit, sent a letter to plaintiffs demanding that plaintiffs close without the permit, and then attempted to termi-nate the contract. Defendant was in breach and plaintiffs was relieved of the duty to perform.

**4. Vendor and Purchaser— real estate sale—time of the essence—not a unilateral determination**

No authority was found for the proposition that one party may unilaterally determine that time is of the essence after the parties have entered into a contract which does not include such a clause. The trial court did not err here by concluding that defendant had breached a real estate sales contract by demanding that plaintiffs close without a valid septic permit no later than a specified date.

**5. Vendor and Purchaser— real estate sale—mutual mistake—waiver**

Defendant waived any ability to avoid a real estate sales contract based on mutual mistake where defendant learned that a septic permit was not valid after the parties entered into the contract, and defendant agreed to obtain a valid permit and then applied for a new permit. Even assuming that defendant could avoid the contract on the ground of mutual mistake, that right was waived at that point.

Appeal by Defendant from judgment entered 11 August 2006 by Judge Benjamin G. Alford in Superior Court, Pender County. Heard in the Court of Appeals 9 May 2007.

*H. Kenneth Stephens, II for Plaintiffs-Appellees.*

*White & Allen, P.A., by Gregory E. Floyd and Richard J. Archie, for Defendant-Appellant.*

McGEE, Judge.

Eugene S. Ball, Peggy M. Ball, Patricia G. Miller, and Kenneth C. Miller, Sr. (Plaintiffs) filed a complaint on 23 December 2003 against Robert E. Maynard, Jr. (Defendant). Defendant sent a letter dated 24 February 2004 to the trial court and to Plaintiffs. In the letter, Defendant stated that the letter was in response to Plaintiffs' action. Defendant filed an amended answer dated 17 June 2005. The amended answer was accepted by the trial court in an order filed 18 July 2005, and the trial court entered judgment on 11 August 2006.

The trial court made the following unchallenged findings of fact: Plaintiffs, as buyers, and Defendant, as seller, entered into an Offer to Purchase and Contract (the contract) for real property located in Pender County (the property) on 11 December 2002. At

the time the parties entered into the contract, Plaintiffs were provided a Septic Improvements Permit (the permit) for the property, and Defendant represented to Plaintiffs that the permit was valid. A section of the contract entitled "Sewer System" stated the following: "[Plaintiffs] [have] investigated the costs and expenses to install the sewer system approved by the Improvement Permit attached hereto as Exhibit A and hereby approve[] and accept[] said Improvement Permit." (R p. 36).

The trial court further found that prior to entering into the contract with Plaintiffs, Defendant had previously conveyed an approximately ten-foot strip of the property to a third party. Unbeknownst to Defendant, this conveyance invalidated the permit. Plaintiffs later learned that the permit was invalid and requested that Defendant provide them with a valid permit. However, Plaintiffs agreed to purchase the real property minus the ten-foot strip of land previously conveyed by Defendant. Defendant then agreed to apply for a valid permit for the property, and did so in April 2003.

Defendant attempted to terminate the contract and tendered Plaintiffs' earnest money on or about 4 September 2003, which Plaintiffs refused. Plaintiffs again requested that Defendant provide them with a valid permit, and that Defendant close on the purchase of the property pursuant to the terms of the parties' contract. Defendant refused. The Pender County Health Department subsequently issued a new Septic Improvements Permit for the property on 21 November 2003.

The trial court concluded the following:

2. That the parties had modified the [c]ontract to the extent that the time for performance on the part of . . . Plaintiffs was extended to allow . . . Defendant to obtain a valid Septic Improvements Permit.

3. That . . . Plaintiffs had a reasonable time in which to close the purchase of the . . . property which reasonable time had not run as of the date that . . . Defendant attempted to terminate the contract.

4. That the attempted termination of the contract by . . . Defendant and . . . Defendant's refusal to transfer the property to . . . Plaintiffs was a breach of the agreement between the parties.

5. That . . . Plaintiffs are entitled to the Court's Order ordering specific performance of the contract on the part of . . . Defendant.

The trial court ordered Defendant to convey the property to Plaintiffs pursuant to the terms and conditions of the parties' contract. Defendant appeals.

"In an appeal from a judgment entered in a non-jury trial, our standard of review is whether competent evidence exists to support the trial court's findings of fact, and whether the findings support the conclusions of law." *Resort Realty of the Outer Banks, Inc. v. Brandt*, 163 N.C. App. 114, 116, 593 S.E.2d 404, 407-08, *disc. review denied*, 358 N.C. 236, 595 S.E.2d 154 (2004). A trial court's conclusions of law are reviewable *de novo*. *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980).

I.

**[1]** Defendant argues the trial court erred by concluding that "the parties had modified the [c]ontract to the extent that the time for performance on the part of . . . Plaintiffs was extended to allow . . . Defendant to obtain a valid Septic Improvements Permit." Specifically, Defendant argues that any modification of the contract did not comply with the Statute of Frauds and lacked consideration.

Generally, the obligations of a buyer and a seller under a real estate purchase agreement "are deemed concurrent conditions— meaning, that neither party is in breach of the contract until the other party tenders his/her performance, even if the date designated for the closing is passed." *Dishner Developers, Inc. v. Brown*, 145 N.C. App. 375, 378, 549 S.E.2d 904, 906, *aff'd per curiam*, 354 N.C. 569, 557 S.E.2d 528 (2001). "It is well settled that absent a time-is-of-the-essence clause, North Carolina law 'generally allows the parties [to a realty purchase agreement] a reasonable time after the date set for closing to complete performance.'" *Id.* (quoting *Fletcher v. Jones*, 314 N.C. 389, 393, 333 S.E.2d 731, 734 (1985)). " '[W]hen time is not of the essence, the date selected for closing can be viewed as "an approximation of what the parties regard as a reasonable time under the circumstance. of the sale." ' " *Id.* (quoting *Fletcher*, 314 N.C. at 393-94, 333 S.E.2d at 735 (quoting *Drazin v. American Oil Company*, 395 A.2d 32, 34 (D.C. Ct. App. 1978))). "[T]he parties may waive or excuse non-occurrence of or delay in the performance of a contractual duty." *Id.* (citing *Fletcher*, 314 N.C. at 394-95, 333 S.E.2d at 735-36).

In *Dishner Developers*, the defendant's contract to purchase real property from the plaintiff contained a thirty-day cure provision after written notice of a title defect, and further provided that closing would take place on or before 1 August 1997. *Id.* at 375, 549 S.E.2d at 904. At closing on 28 July 1997, the defendant learned there were three outstanding deeds of trust encumbering the real property. *Id.* at 376, 549 S.E.2d at 904. The defendant was unwilling to close under the circumstances, but she left the documents and funds necessary for closing at a later date with her attorney. *Id.* The plaintiff's attorney subsequently informed the defendant's attorney that the deeds of trust would be canceled and that the plaintiff was prepared to close. *Id.* However, on or about 4 August 1997, the defendant's attorney communicated to the plaintiff's attorney that the defendant wanted to void the contract and have her earnest money refunded. *Id.* at 376, 549 S.E.2d at 905.

Our Court recognized that the parties' purchase agreement did not contain a time-is-of-the-essence clause. *Id.* at 378, 549 S.E.2d at 906. Therefore, the plaintiff had a reasonable time after the closing date to perform the contract. *Id.* However, the defendant "failed to give [the] plaintiff the thirty days provided under the contract, or 'reasonable time' provided by existing case law, to cure the defect. Therefore, when [the] defendant declared the contract null and void on 4 August 1997—just a week after the failed closing—she breached the contract." *Id.*

In *Fletcher*, the "defendant and [the] defendant's attorney continued to orally reassure and represent to [the] plaintiff and her husband that [the] defendant intended to close and consummate the transaction beyond the 10 March 1981 closing date." *Fletcher*, 314 N.C. at 394, 333 S.E.2d at 735. On 4 August 1981, almost five months after the scheduled closing, the defendant's attorney informed the plaintiff's attorney that the defendant was prepared to close. *Id.* at 391, 333 S.E.2d at 733. However, on 24 September 1981, the defendant's attorney returned the plaintiff's earnest money and sent a letter to the plaintiff's attorney declaring that the contract was null and void. *Id.* at 392, 333 S.E.2d at 733. Two days later, the plaintiff tendered the full amount that was due at closing along with a properly executed promissory note for the balance, as was required by the contract. *Id.* The contract did not contain a time-is-of-the-essence clause. *Id.* at 393, 333 S.E.2d at 734.

The Court recognized that "[a] waiver can be defined as an 'excuse of a non-occurrence or of a delay in the occurrence of a con-

dition of a duty.' " *Id.* at 394, 333 S.E.2d at 735 (quoting E. Farnsworth, *Contracts* § 8.5, at 561 (1982)). "The basis for a waiver can be inferred from conduct or expressed in words. '[C]onduct such as continuing performance with knowledge that the condition has not occurred might be questionable as the manifestation needed for a modification but sufficient for waiver.' " *Id.* (quoting E. Farnsworth, *Contracts* § 8.5, at 562) (internal citation omitted). Our Supreme Court held that the defendant had waived the 10 March 1981 closing date. *Id.* at 395, 333 S.E.2d at 735.

Our Supreme Court further held that the trial court's findings of fact supported the trial court's conclusion that the plaintiff " 'made full and sufficient tender' " within a reasonable time after receiving notice that the defendant was ready to close. *Id.* at 399, 333 S.E.2d at 738. The Court noted that "[a]lthough it would have been more desirable for the [trial court] to include within [its] conclusions of law that [the] plaintiff's tender of performance was within a 'reasonable time,' we do not think that omission alone is fatal to the validity and correctness of the judgment." *Id.* at 399-400, 333 S.E.2d at 738.

In the present case, Defendant does not challenge the trial court's findings of fact that when Plaintiffs learned that the permit was invalid, they requested that Defendant correct the problem and provide them with a valid permit. Defendant then agreed to obtain a valid permit and applied for a new Septic Improvements Permit in April 2003. Because these findings are unchallenged by Defendant, they are binding on appeal. *See Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003). We hold that Defendant waived the closing date originally agreed upon by the parties by agreeing to obtain and provide Plaintiffs a valid permit. Therefore, the parties had a reasonable time after the original closing date in which to close. *See Dishner Developers*, 145 N.C. App. at 378, 549 S.E.2d at 906.

Although the trial court determined that Plaintiffs and Defendant had modified the contract, we hold that Defendant's conduct was in the nature of a waiver of a condition of the contract, rather than a modification of the contract. This is demonstrated by examining the trial court's conclusion in light of the remainder of the judgment. In *White v. Graham*, 72 N.C. App. 436, 325 S.E.2d 497 (1985), our Court stated that:

An elementary North Carolina rule in the interpretation of judgments is that the pleadings, issues and other circumstances of the

case must be considered. Judgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole, in light of practicality and the intention of the court.

*Id.* at 441, 325 S.E.2d at 501 (citations omitted).

In the present case, the trial court did not make any findings or conclusions related to the Statute of Frauds or consideration sufficient for a contractual modification. This demonstrates that the trial court's ruling was in the nature of a finding of waiver on the part of Defendant, rather than a modification of the contract by the parties. Also, other conclusions made by the trial court demonstrate that the trial court concluded that Defendant waived the closing date in the parties' contract. The trial court concluded that "Plaintiffs had a reasonable time in which to close the purchase of the . . . property which reasonable time had not run as of the date that . . . Defendant attempted to terminate the contract." This conclusion is in line with the conclusion of law upheld by our Supreme Court in *Fletcher*. In *Fletcher*, our Supreme Court held that the trial court's findings of fact supported the trial court's conclusion that the plaintiff " 'made full and sufficient tender' within a reasonable time after being notified that [the] defendant was ready to close." *Fletcher*, 314 N.C. at 399, 333 S.E.2d at 738. Moreover, our Supreme Court in *Fletcher* upheld the conclusion of law despite the omission that the plaintiff's tender was within a "reasonable time." *Id.* at 399-400, 333 S.E.2d at 738. In the case before us, the trial court did conclude that Plaintiffs' reasonable time to close had not run as of the date Defendant attempted to terminate the contract.

Our Court has also held that where "a court's ruling [is] based upon a misapprehension of law, '[but] the misapprehension of the law does not affect the result[,] . . . the judgment will not be reversed.' " *Smith v. Beaufort County Hosp. Ass'n.*, 141 N.C. App. 203, 212, 540 S.E.2d 775, 781 (2000) (quoting *Bowles Distributing Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 348, 317 S.E.2d 684, 689 (1984)), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 435, *aff'd per curiam*, 354 N.C. 212, 552 S.E.2d 139 (2001). Therefore, in this case, even if the trial court's ruling could be characterized as misapprehending the law regarding modification, any misapprehension did not affect the result in the present case. We hold Defendant waived the original closing date and that Plaintiffs had a reasonable time after that date in which to perform. Therefore, because Defendant waived the timeliness of Plaintiffs' performance, the trial court was not required to make find-

ings regarding the Statute of Frauds or consideration sufficient for a modification of the contract.

Defendant further cites *Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 323 S.E.2d 23 (1984), which is distinguishable. In *Clifford*, the plaintiff purchased real property from the defendant and the property subsequently flooded. *Id.* at 462, 323 S.E.2d at 24. The defendant told the plaintiff the house was "warranted" and sent a letter to the plaintiff stating that warranties on homes for workmanship, material and subcontractors were for one year. *Id.* When the defendant's efforts to correct the flooding problem were unsuccessful, the plaintiffs filed suit against the defendant. *Id.*

Our Supreme Court held that neither the defendant's statement, nor the letter, were sufficient to create a warranty. *Id.* at 464-65, 323 S.E.2d at 26. Moreover, even if they had been sufficient, neither the statement nor the letter complied with the Statute of Frauds. *Id.* at 465-66, 323 S.E.2d at 26. The Court recognized that oral modifications of an agreement within the Statute of Frauds are ineffectual. *Id.* at 465, 323 S.E.2d at 26. Furthermore, the letter was ineffectual to modify the contract because it did not contain all essential elements of a warranty. *Id.* at 465-66, 323 S.E.2d at 26. The Court further held that even if the letter had complied with the Statute of Frauds, the modification would be unenforceable because of a lack of new consideration. *Id.* at 466, 323 S.E.2d at 26-27.

In the present case, Defendant argues that *Clifford* is analogous because the parties in the present case did not memorialize any contract modification in writing. Defendant further argues that any contract modification in the present case lacked new consideration. However, as we have already held, Defendant waived the closing date set forth in the original contract. We do not find that the parties modified the contract. Therefore, no new writing or consideration was required, and *Clifford* is inapplicable. We hold the trial court did not err.

II.

[2] Defendant next argues there was insufficient evidence to support the trial court's finding that at all relevant times, Plaintiffs were ready, willing, and able to close on the purchase of the real property. Our Supreme Court has stated:

The remedy of specific performance is available to "compel a party to do precisely what he ought to have done without being

coerced by the court." *McLean v. Keith*, 236 N.C. 59, 71, 72 S.E.2d 44, 53 (1952). The party claiming the right to specific performance must show the existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform.

*Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981). " 'The term "ready, willing, and able" means that the prospective purchaser desires to purchase, is willing to enter into an enforceable contract to purchase, and has the financial and legal capacity to purchase within the time required on the terms specified by the seller.' " *Resort Realty*, 163 N.C. App. at 118, 593 S.E.2d at 408 (quoting James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 8-11, at 253 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999)). "Further, 'the purchaser indicates readiness and willingness by executing a valid offer to purchase that either complies with the seller's requirements as set forth in the listing contract or is accepted by the seller.' " *Id.* at 118, 593 S.E.2d at 409 (quoting James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 8-11, at 253).

In the present case, at the time Plaintiffs and Defendant entered into the contract, Plaintiffs were provided a Septic Improvements Permit and Defendant represented to Plaintiffs that the permit was valid. Under the section of the contract entitled "Sewer System" the contract provided: "[Plaintiffs] [have] investigated the costs and expenses to install the sewer system approved by the Improvement Permit attached hereto as Exhibit A and hereby approve[] and accept[] said Improvement Permit." In Defendant's letter dated 24 February 2004, Defendant stated as follows: "In December 2002 [the property] went under contract with . . . [P]laintiffs with a proposed closing of February 14th 2003. One of the conditions of the purchase was a valid septic tank permit which was supplied to the buyer." Therefore, because Plaintiffs and Defendant contemplated the permit in their contract and because Defendant admitted that a valid permit was a condition of the contract, we hold that a valid permit was a condition of the contract.

As established by *Resort Realty*, a buyer indicates readiness and willingness to purchase when the buyer " 'execut[es] a valid offer to purchase that . . . is accepted by the seller.' " *Resort Realty*, 163 N.C. App. at 118, 593 S.E.2d at 409 (quoting James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 8-11, at 253.) Thus, Plaintiffs in this case were ready and willing to perform when they

entered into the contract. Thereafter, it was discovered that the permit was invalid. Plaintiffs continued to insist that Defendant provide a valid permit, which was a condition of the original contract. Defendant agreed to do so and applied for a new permit, thereby waiving the original closing date. At that point, Plaintiffs remained ready and willing to perform as long as Defendant provided a valid permit. Neither Plaintiffs' readiness, willingness, nor ability to perform were negated by Plaintiffs' insistence that Defendant comply with the terms of the original. contract. Therefore, we hold that the challenged finding of fact was supported by the evidence.

## III.

[3] Defendant argues the trial court erred by concluding that Defendant breached the contract. Defendant argues that Plaintiffs had previously terminated the contract by their failure to close the transaction when demanded by Defendant. Defendant argues that under the parties' contract, Defendant was not required to provide Plaintiffs with a valid permit. Therefore, Defendant argues, Plaintiffs' refusal to close without a valid permit was a breach of the contract.

It is well settled that where one party breaches a contract, the other party is relieved from the obligation to perform. *Dishner Developers*, 145 N.C. App. at 378-79, 549 S.E.2d at 906 (citing *Mizell v. Greensboro Jaycees*, 105 N.C. App. 284, 289, 412 S.E.2d 904, 908 (1992)). In the present case, Defendant was obligated to provide a valid permit to Plaintiffs. When Defendant sent a letter to Plaintiffs demanding that Plaintiffs close without the permit, and then attempted to terminate the contract, Defendant was in breach of the contract. Therefore, Plaintiffs were relieved of the duty to perform.

[4] Defendant also argues that his letter demanding that Plaintiffs close without a valid permit no later than 4 September 2003 served to make time of the essence. This argument lacks merit. In support of this argument, Defendant cites *Johnson v. Smith, Scott & Assoc., Inc.*, 77 N.C. App. 386, 335 S.E.2d 205 (1985), where our Court stated: "The contract here does not expressly provide that time is of the essence, nor do we find anything in the contract or in the parties' actions which demonstrate their intent to make time of the essence." *Id.* at 390, 335 S.E.2d at 207. However, Defendant has not cited, nor do we find, any authority for the proposition that one party may unilaterally determine that time is of the essence after the parties have entered into a contract which does not include such a clause.

We hold the trial court did not err by concluding that Defendant breached the contract.

## IV.

**[5]** Defendant also argues the trial court erred by concluding that Defendant breached the contract and that Plaintiffs were entitled to specific performance because the evidence established that the parties entered into the contract based upon a mutual mistake of fact. Therefore, Defendant argues he was entitled to rescind the contract.

In *MacKay v. McIntosh*, 270 N.C. 69, 153 S.E.2d 800 (1967), our Supreme Court recognized:

> "The formation of a binding contract may be affected by a mistake. Thus, a contract may be avoided on the ground of mutual mistake of fact where the mistake is common to both parties and by reason of it each has done what neither intended. Furthermore, a defense may be asserted when there is a mutual mistake of the parties as to the subject matter, the price, or the terms, going to show the want of a consensus *ad idem*. Generally speaking, however, in order to affect the binding force of a contract, the mistake must be of an existing or past fact which is material; it must be as to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties."

*Id.* at 73, 153 S.E.2d at 804 (quoting 17 Am. Jur. 2d, Contracts § 143). However, in the present case, we need not decide whether Plaintiffs and Defendant entered into the contract under a mutual mistake of fact. Even assuming the existence of a mutual mistake of fact as to the validity of the permit, we hold that Defendant waived any opportunity to avoid the contract on this basis.

> A waiver is sometimes defined to be an intentional relinquishment of a known right. The act must be voluntary and must indicate an intention or election to dispense with something of value or to forego some advantage which the party waiving it might at his option have insisted upon. The waiver of an agreement or of a stipulation or condition in a contract may be expressed or may arise from the acts and conduct of the party which would naturally and properly give rise to an inference that the party intended to waive the agreement. Where a person with full knowledge of

all the essential facts dispenses with the performance of something which he has the right to exact, he therefore waives his rights to later insist upon a performance. A person may expressly dispense with the right by a declaration to that effect, or he may do so with the same result by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right.

*Guerry v. Trust Co.*, 234 N.C. 644, 648, 68 S.E.2d 272, 275 (1951).

In the present case, after it was discovered that the permit provided by Defendant was invalid, Defendant agreed to obtain a valid permit, and applied for a new permit. We hold that by these actions, Defendant waived any ability to avoid the contract on the ground of mutual mistake. It is clear that after Plaintiffs and Defendant entered into the contract, Defendant learned the permit was invalid. At that point in time, even assuming that Defendant had the right to avoid the contract on the ground of mutual mistake of fact, Defendant chose to waive that right. Defendant could not thereafter unilaterally resurrect the right he had previously waived. Therefore, the trial court did not err.

Affirmed.

Judges LEVINSON and JACKSON concur.