MURPHY, Judge.
In 2013, Carl Christian Radinger ("Plaintiff") entered into a contract with Defendant Asheville School, Inc., ("Asheville School") to board and educate his son Philippe for the 2013-2014 academic year. During the fall semester, Philippe's mother emailed Asheville School faculty members that it was Philippe's grandmother's birthday and asked to excuse Philippe from an upcoming mandatory school camping trip. Asheville School later learned that it was not Philippe's grandmother's birthday and that Philippe had lied to Asheville School faculty members. Asheville School then dismissed Philippe for violation of Asheville School's Honor Code.
Plaintiff first argues that the contract he entered into with Asheville School is unenforceable due to a lack of consideration. Alternatively, Plaintiff argues that the contract is ambiguous and that Asheville School breached the contract when it dismissed Philippe. We reject Plaintiff's argument that the contract he entered into with Asheville School is illusory and fails for lack of consideration. We further hold that the contract is unambiguous, and Asheville School did not breach the contract. Accordingly, we affirm the trial court's grant of summary judgment in favor of Asheville School.
BACKGROUND
The facts of this case are not in dispute. Philippe was enrolled at Asheville School for the 2013-2014 academic year, and Plaintiff paid a reservation fee of $6,833.00 and tuition of $38,717.00. Plaintiff did not purchase tuition refund insurance. To enroll Philippe, Plaintiff was required to sign Asheville School's Reservation Agreement which provides in relevant part:
The Reservation Fee reserves a place for your child at Asheville School for the 2013-2014 academic year and shall be applied against tuition charges for the 2013-2014 academic year. The Reservation Fee is not refundable.
....
The School shall have no obligation to refund or forgive any part of the tuition charges if your child is withdrawn or dismissed after June 30, 2013. If your child is withdrawn or dismissed on or before June 30, 2013, the School shall refund all tuition charges paid in advance, less the Reservation Fee.
....
The School reserves the right to dismiss your child at any time if in the judgment of the Headmaster such dismissal is in the best interest of the School or your child. The School may expel or suspend your child in accordance with the policies set out in the Student Handbook.
Philippe signed Asheville School's Honor Code Agreement which provides, inter alia :
I will not lie, cheat, or steal, and I will report any violation of the Honor Code.
On the weekend of 11 October 2013, Asheville School students were preparing for a mandatory camping trip. Philippe hated camping, and his mother sent an email to Asheville School faculty members stating that it was his grandmother's birthday. Philippe's mother and grandmother then came to Asheville School and checked Philippe out for the weekend. Mary Wall ("Wall"), Assistant Head of Student Affairs for Asheville School, saw a Facebook photo which showed Philippe at a gathering with friends the night of the mandatory camping trip. The following Tuesday, Wall and another faculty member met with Philippe to discuss what happened over the weekend. They "asked why he did not participate in the Asheville School camping trip." Philippe responded that he and his family went out to eat and then returned home where he spent the evening talking with his mother and grandmother. Wall continued questioning Philippe, and, with the benefit of the Facebook photo, she again asked why he did not participate in the camping trip. Philippe then told Wall that it was not his grandmother's birthday and that he was actually socializing with friends the night of the camping trip. He confessed that he asked his mother to help him get out of the camping trip.
Wall reported this incident to Asheville School's Honor Council. Proceedings to determine whether Philippe violated the Honor Code commenced on 15 October 2013. The Honor Council determined that an Honor Code violation had occurred and unanimously recommended to the Headmaster that Philippe be dismissed from Asheville School. The next day, the Headmaster dismissed Philippe and sent Plaintiff a letter informing him of his son's dismissal. Plaintiff requested a pro-rata reimbursement of tuition paid and Asheville School declined, stating that it had no obligation to reimburse the payment.
Plaintiff filed a complaint in Buncombe County Superior Court alleging three causes of action. He alleged that the parties' agreement was voidable for failure of consideration. Alternatively, he alleged that Asheville School breached the contract, because Plaintiff had already paid the annual tuition and Asheville School did not board and educate Philippe for the remainder of the year. Plaintiff also alleged that Asheville School was unjustly enriched by his tuition payment. Asheville School filed a motion for summary judgment, and the motion was granted. Plaintiff timely appealed and argues that the trial court erred by granting summary judgment in Asheville School's favor.
STANDARD OF REVIEW
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).
ANALYSIS
Plaintiff first argues that the contract he entered into with Asheville School is illusory and is unenforceable due to a lack of consideration. Alternatively, Plaintiff argues that the contract that he entered into with Asheville School is ambiguous and that Asheville School breached the contract when it dismissed Philippe on 16 October 2013. Plaintiff's final argument is that Asheville School has been unjustly enriched by Philippe's tuition.
I. Consideration
Plaintiff argues that the agreement to board and educate his son is facially illusory and therefore not supported by valid consideration. Specifically, he maintains that Asheville School was not obligated to board and educate Philippe because the terms of the Reservation Agreement do not expressly state Asheville School's obligations after tuition is paid. However, in Brenner v. Little Red School House, Ltd. , our Supreme Court discussed how upfront tuition payment serves as valid consideration in a contract for private school education:
[P]laintiff contracted to pay the tuition for the entire school year in advance of the first day of school. In consideration therefor, defendant promised to hold a place in the school for plaintiff's child, to make all preparations necessary to educate the child for the school year, and to actually teach the child during that period. Both parties received valuable consideration under the terms of the contract. After receiving plaintiff's tuition payment, defendant reserved a space for plaintiff's child, made preparations to teach the child, and at all times during the school year kept a place open for the child. This performance by defendant was sufficient consideration for plaintiff's tuition payment. A school such as defendant must make arrangements for the education of its pupils on a yearly basis, prior to the commencement of the school year. Many of these arrangements are based upon the number of pupils enrolled, for example, the teaching materials to be ordered, the number of teachers to be hired, and the desks and other equipment which will be used by the children. In addition, private schools are often limited in the number of pupils that can be accommodated, so that the reservation of a space for one child may prevent another's enrollment in the school.
Brenner v. Little Red School House, Ltd. , 302 N.C. 207, 211-12, 274 S.E.2d 206, 209-10 (1981). Here, Asheville School agreed to reserve a space for Philippe, took actions to prepare for his enrollment, and boarded and educated him until he was dismissed. By taking these steps and holding a place for Philippe, Asheville School provided valuable consideration to Plaintiff.
Plaintiff further argues that the dismissal clause in the Reservation Agreement renders the contract unenforceable. The dismissal clause at issue states:
The School reserves the right to dismiss your child at any time if in the judgment of the Headmaster such dismissal is in the best interest of the School or your child.
Plaintiff argues that this dismissal clause differentiates his case from Brenner and results in this contract being unenforceable. We disagree, because well-settled principles of contract law obligate the Headmaster to use good faith and honest judgment when determining whether or not a student's dismissal is in the student or Asheville School's best interest.
"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Authority, Inc. v. Bell , 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted). "[A] party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." Weyerhaeuser Co. v. Godwin Building Supply Co. , 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979). Here, the parties' contract obligated Asheville School to exercise good faith if, in its agent's discretion, it was determined to be in the best interest of Philippe or Asheville School to dismiss Philippe. The dismissal clause does not render the contract illusory, and there is no allegation that Asheville School acted in bad faith. Mezzanotte v. Freeland , 20 N.C. App. 11, 17, 200 S.E.2d 410, 414 (1973) ( "Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play."). The provisions of the Reservation Agreement do not render the contract illusory on its face.
II. Ambiguity
Plaintiff next argues that Asheville School's interchangeable use of the words "dismissal" and "expel" in the Reservation Agreement and Student Handbook render the contract ambiguous and create a factual issue that should be interpreted by a jury. Plaintiff maintains that Philippe was dismissed and not expelled. While the words "dismissal" and "expel" are distinct, there is no meaningful difference between these words in this context.
"When language of a contract is plain and unambiguous its construction is a matter of law for the court." DeTorre v. Shell Oil Co. , 84 N.C. App. 501, 504, 353 S.E.2d 269, 272 (1987). The Reservation Agreement clearly states that Asheville School "reserves the right to dismiss your child" and "may expel your child in accordance with the policies set out in the Student Handbook." The Student Handbook expressly provides that "[d]ismissal is an unfortunate but very possible consequence" of violating the Honor Code. Together, the Reservation Agreement and Student Handbook unambiguously convey that a student's violation of the Honor Code could result in his or her dismissal from Asheville School.
III. Breach
Plaintiff contends that if there was a valid contract, then Asheville School breached the agreement by failing to board and educate Philippe for the remainder of the 2013-2014 academic year. However, Philippe was dismissed in accordance with the terms of the contract, and, thus, Asheville School was relieved of any further obligations to Plaintiff.
"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Montessori Children's House of Durham v. Blizzard , 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016). "It is well settled that where one party breaches a contract, the other party is relieved from the obligation to perform." Ball v. Maynard , 184 N.C. App. 99, 108, 645 S.E.2d 890, 897 (2007) (citation omitted).
By virtue of being a student at Asheville School, Philippe was obligated to adhere to the policies in the Student Handbook and the Honor Code. The Reservation Agreement, signed by Plaintiff, incorporates the Student Handbook and Honor Code by reference:
The School may expel or suspend your child in accordance with the policies set out in the Student Handbook.
The Student Handbook states the Honor Code's purpose, which is "to foster and preserve honor and integrity in the Asheville School community." The Honor Code provides in part:
I will not lie, cheat, or steal, and I will report any violation of the Honor Code.
The Student Handbook provides that a violation of the Honor Code is a Level 1 offense, and that "[d]ismissal is an unfortunate but very possible consequence" of violating the Honor Code.
Philippe violated the Honor Code when he lied to two Asheville School faculty members after the weekend of 11 October 2013. It is undisputed that Philippe violated the Honor Code and that the Student Handbook provided adequate notice that violations of the Honor Code could result in dismissal. Philippe admitted to lying, and in accordance with Asheville School policy, the Honor Council determined that an Honor Code violation occurred. Based on the Honor Council's recommendation, the Headmaster dismissed Philippe. All of Asheville School's actions were done in accordance with the terms set out in the Reservation Agreement and Student Handbook. Once Philippe had been dismissed in good faith, Asheville School was no longer required to board or educate Philippe and had no obligation to refund the tuition.
Philippe violated Asheville School's Honor Code. Plaintiff has not argued, nor was any evidence presented, that Asheville School acted in bad faith by dismissing Philippe. There is no genuine issue of material fact regarding Plaintiff's cause of action for breach of contract. Summary judgement was properly granted.
IV. Unjust Enrichment
Finally, Plaintiff alleges that Asheville School has been unjustly enriched by refusing to reimburse tuition paid for Philippe's boarding and education after he was dismissed. Asheville School refused to reimburse Plaintiff on the grounds that it was not obligated to do so.
It is true that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Booe v. Shadrick , 322 N.C. 567, 570, 369 S.E.2d 554, 555-56 (1988) (citation omitted). However, "[t]he doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' and thus will not apply here where a contract exists between two parties." Atlantic & E. Carolina Ry. Co. v. Wheatly Oil Co. , 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 (2004) (citation omitted). Plaintiff maintains that he is entitled to have a jury determine whether Asheville School has been unjustly enriched. Because we have determined that there was a valid contract, Plaintiff's cause of action for unjust enrichment must fail.
CONCLUSION
We conclude that there was a valid contract between Plaintiff and Asheville School, and the dismissal clause in the Reservation Agreement did not make the consideration that Plaintiff received illusory. In addition, the terms of the contract were unambiguous, and Asheville School did not breach the contract by dismissing Philippe or by failing to board and educate him for the remainder of the 2013-2014 academic year. As there was a valid contract, unjust enrichment is not a remedy available to Plaintiff.
AFFIRMED.
Report per Rule 30(e).
Judges DAVIS and INMAN concur.